## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Abdus--Shahid M.S. Ali,            )
[USP-Reg.No.03201-000 ]            )
[  DCDC No, 136-476    ]           )
P.O.Box 2068/USP-Big Sandy         )      Civil Action No. 06-0235
Inez, Kentucky 41224               )
           Plaintiff,              )      Judge:Lamberth
                                   )            U.S. District Court Judge
     -V-                           )
                                   )      Calendar:    **RECEIVED**
U.S. Parole Commission, et al.,    )
           Defendants'             )      Track        JUN 1 6 2006
                                   )
--------------------------------------------------- NANCY MAYER WHITTINGTON CLERK
                                                         U.S. DISTRICT COURT
PLAINTIFF"S OPPOSITION TO THE Defendants "MOTION TO DISMISS" COMPLAINT

Comes now the above cited Plaintiff and so state as follows:

[1] The Plaintiff opposes the Motion To Dismiss because even though defendants May or may-not live within the District of Columbia, in and of it's self that does not mean that they cannot properly be sued in the district of columbia.[1]  The attached Motion request the Court to amend the Plaintiff's Jurisdictional -Venue-Statements to be inclusive of the D.C.C. Long-Arm- Law Statute which would permite service outside the District of Columbia for those defendants that do live outside the District of Columbia,D.C.C. § 13-423 and 13-424. Since this is the first amendment of the plaintiff's petition it should be allowed.

[2] That the District of Columbia have three statutory bases for the exercise of personal jurisdiction over a corporation. The plaintiff may establish "general" personal jurisdiction  under D.C. Code Section 13-422. The  plaintiff may establish " specific" personal jurisdiction under D.C. Code Section 13-423, the District of Columbia's long-arm statute.

---

[1]/ Plaintiff have amended his Jurisdictional-Statement and Venue to be inclusive of the D.C.Code's "Long-Arm-Statutes D.C.C.§13-334(a), §13-422, or Plaintiff may establish"sepecific personal jurisdiction under D.C.C. §13-423(a) and(b).

-2-

statutes.  Service outside of the District of Columbia...(D.C.Code §13-424), states "When the exercise of personal juridiction is autho- rized by this subchapter, service may be made outside the District of Columbia."  Thus the "Exclusive Basis of Jurisdiction" for the Dis- trict of Columbia's long-arm-statute is the only basis upon which per- sonal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia.

[3] The Defendants have requested that the Plaintiff's Complaint be "dismissed". Hoever, that is only one means that the Court have at its' disposal. The Court in the interest of justice may "transfer" the writ to its proper jurisdiction rather than dismiss it. Should the case turn on jurisdiction and venue that the Plaintiff would request that this court consider the transferring of the case to the U.S.Dis- trict Court in Chevy Chase, Maryland.SEE:  Saudi v. Northrop Grumman Corp, 273 F. Supp. 2d 101,(D.D.C. 2003)(Head-note(3)).

Respectfully Submitted,

May 20, 2006                    /S/ _Abdus Shahid M.S. Ali_

                                Abdus-Shahid M.S. Ali, pro se.,
                                [USP-#03201-000][DCDC#136-476]
                                P.O.Box 2068///USP-Big Sandy
                                Inez, Kentucky 41224

CC: Files
    Counsel, K. Konopka,
    Asst. U.S. Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Abdus--Shahid M.S. Ali,            )
[USP-Reg.No.03201-000 ]            )
[  DCDC No, 136-476    ]           )
P.O.Box 2068/USP-Big Sandy         )        Civil Action No. 06-0235 _____
Inez, Kentucky 41224               )
            Plaintiff,             )        Judge: Lamberth _____
                                   )                U.S. District Court Judge
    -V-                            )
                                   )        Calendar:
U.S. Parole Commission, et al., )
            Defendants'            )        Track
                                   )

PLAINTIFF'S OPPOSITIONAL "POINTS AND AUTHORITIES" TO THE DEFENDANTS'

"MOTION TO DISMISS" COMPLAINT

        Plaintiff, Abdus-Shahid M.S. Ali, proceeding pro se., after be-
ing denied the appointment of a pro-bono counsel for this vital and
important first-test of the 1983 action against the U.S. Parole Com-
mission, do state as follows:

        [1] That the defendants have filed a motion to dismiss the com-
plaint (1983 action) pursuant to the Federal Rules of Civil Procedure
12(b)(1), 12(b)(3), and 12(b)(6)...which ofcourse invoke the policy
of "Summary Judgment" dismissal under Fox v. Strickland,837 F.2d 507,
509(D.C.Cir.1988). The Plaintiff therefore oppose this dismissal be-
cause the defendants are wrong and it aims to defeat the interest of
justice in this matter and if allowed the true merits would never be
seen in the light-of-day.

        [2] That the defendants also open their "motion to Dismiss"via.,
"footnote(1)" complaining that the U.S. Marshall service did not pro-
perly serve the complaint and summon-notice on the defendants properly
to invoke over the individual defendants.  The Plaintiff requested of

-2-

the Court by "motion" to have the defendants served by the U.S. Mar-
shall Service pursuant to F.R.Civ. P. 4(c)(2). Now,when this was done,
I do not know because neither the Clerk of the Court or U.S.Marshalls
notified me of any service that had been done. Now The Counsel for the
defendants is on record as having stated and mailed their "motion To
Dismiss' on May 12th, 2006. However, I received mail,on May 18th, 2006,
from the Court,that said Court ordered the U.S. Marshall Service to serve
the Defendants on May 15th, 20006. How could the U.S. Marshalls have
acted before the Court ordered them to ? The defendants cited the case
of <u>Murphy Brothers, Inc. v. Michetti Pipe Stringing,</u> 526 U.S. 344,350,
(1999); 143 L.Ed 2d 448; 119 S. Ct. 1322...which deals with 28 U.S.C.
§1446(b), which cite "Defendant's time to remove case held triggered
by service of summons and complaint-or receipt of complaint after and
apart from service of summons- and not by receipt of complaint without
any formal service.  Now , I do not know how service was made or when
but it is in the hand and power of this court to correct it in the in-
terest of justice to all-Plaintiff and Defendant.

[3] That the Plaintiff have request/amended his complaint's
jurisdictional-venue statement to be inclusive of the D.C.Code's long-
arm Statutes.  Thus, in general,in  District of Columbia, there are
three statutory bases for the exercise of personal jurisdiction over a
corporation; A plaintiff may establish "general" personal jurisdiction
under D.C. Code § 13-332(a)(activity) or D.C.Code §13-422(location), or
a plaintiff may establish "sepecific personal jurisdiction under D.C.
Code §13-423, the District of Columbia's long-arm statute... <u>See: Lee
v. State Comp. Ins. Fund,</u> ____F.Supp.____ (D.C.C. July 12, 2005)(2005
U.S.Dist. LEXIS 16900 ).  Service outside the District of Columbia is

pursuant to D.C. Code §13-424 " when the exercise of personal jurisdiction is authorized by this subchapter, service may be made outside the District of Columbia."

[4] <u>Exclusive Basis of Jurisdiction</u>: The District of Columbia long-arm statute is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia...<u>See:Risley v. Hawk,</u> 918 F.Supp. 18(D.C.C. 1996) affd. 108 F.3d 1396(D.C.Cir1997).

[5] That defendants are in error when they state to the court that "Dismissal is appropriate in this case because Plaintiff's claim is congnizable exclusively through a writ of habeas corpus in the judicial district in which Plaintiff is incarcerated." Unquote. That may have been the case -law in the past but it does not reflect the law now!!! <u>See: Wilkinson, Director, Ohio Department of Rehabilitation and Correction, et al., v. Dotson ET AL.</u>, 544 U. S. _____ , 116 L.Ed.2d 253 (No. 03-287, argued December 6, 2004-Decided March 7, 2005). This is a consolidated case and respondent's Dotson and Johnson are Ohio State prisoners. After parole officials determined that Dodson was not eligible for parole and that Johnson was not suitable for parole, they brought separate actions for declaratory and injunctive relief under 42 U.S.C. Section 1983, claiming that Ohio's parole procedure violate the Federal Constitution. In each case, the Federal District Court concluded that a sec. 1983 action does not lie and that the prisoner would have to seek relief through a habeas corpus suit. The Sixth Circuit ultimately consolidated the Cases, and reversed, finding that the actions could proceed under sec. 1983.

-4-

[6] That Ohio Defendants appealed to the U.S. Supreme Court which ruled 8 to 1 in favor of Respondents, Dotson and Johnson...it was held ...State prisoners may bring a sec. 1983 action for declaratory and injunctive relief challenging the constitutionality of state parole procedures; they need not seek relief exclusively under the federal habeas corpus statutes. (see Pp. 3-10 of slip opinion),(if possible the Plaintiff will attach hereto the Slip opinion as Plaintiff's Exhibit No. (13)).

[7] That the plaintiff's claims like those of Dotson and Johnson does not seek invalidity of his conviction, nor does the requested injunction request operate to get immediate or speedier release into the community. See: Preiser, 411 U.S. at 500; Wolff, Supra, 418 U.S. 539, at 554-555; Muhammad v. Close, 540 U.S. 749 at 751 n.1(2004)(per curiam); See: Edwards v. BAlisok, 520 U.S. 641, 643, 647-648; Heck v. Humphrey, 512 U.S. 477.  Thus, Heck, supra, is consistent with other cases permitting prisoners to bring sec. 1983 challenges to prison administrative decisions.  Balisok applied Heck's standard and addressed a claim seeking not only damages, but also a separate declaration that the State's procedures were unlawful, See: 520 U.S. at 643, 647-648...Cited all in Dotson Supra., 544 U.S. ___,161 L.Ed.2d 253.

[8] That Defendants at (p.1) of Mem. of Points and authorities invoke the doctrine of sovereign immunity over the U.S. Parole Commission(commissioon) and its members in their official capacities under 42 U.S.C. sec 1983, plus, while also claiming that the U.S. Marshall Service failed to properly serve the Commission's members in their individual capacities.

-5-

(A) The Authority and Functions of the Commission with respect to the District of Columbia Code Offenders: <u>See</u>, Subpart "C" Sec. 2.70, state:

(a)    The U.S. Parole Commission shall exercise authority over District of Columbia Code Offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law 105-33, 111 Stat. 712, and D.C. Code 24-209.  The rules in this subpart shall govern the operation of the U.S. Parole Commission with respect to D.C. Code Offenders and shall constitute the parole rules of the District of Columbia as amended and supplemented pursuant to Sec. 11231(a)(1) of the Act."

(b)    "The Commission shall have sole authority to grant parole, and to establish the conditions of release, for all District of Columbia Code prisoners who are serving sentences for felony offenses, and who are eligible for parole by statute, including offenders who have been returned to prison upon the revoca-tion of parole or mandatory release(D.C. Code 24-208). The above authority shall include youth offenders who are committed to prison for treatment and rehabilitation based on felony convictions under the D.C. Code(D.C. Code 24-804(a))." Etc.

(B)  Federal personnel generally go under Color of Federal Law. However, People and Corporations who do work in prisons providing services for same act under Color of State Law(the Commissioners

-6-

are performing a service for the District of Columbia under the D.C. Code 24-804(a), etc., thus, it acts under color of stat law or D.C. Law. See: District of Columbia v. Carter, 409 U.S. 418, 424, 93 S.Ct. 602(1973); Del Raine v. Carlson, 826 F.2d 698, 704(7th Cir. 1987). "Federal personnel who act jointly with state officials or conspire with them may be deemed to act under color of state law. Hampton v. Hanrahan, 600 F.2d 600, 623(7th Cir. 1979) rev'd in part, 446 U.S. 754(1980). They may also act under color of state law if they are carrying out state law in particuar case; (as the U.S. Parole Commission is doing in replacing the D.C. Board of Parole). See: Terrell v. Petrie, 763 F.Supp. 1342, 1344(E.D. Va. 1991), aff'd 952 F.2d 397(4th Cir. 1991).

[9] Injunctive claims against Federal Officials: Such suits with respect to injunctive claims, sovereign immunity has been waived by a fededral statute, and such claims may be brought against the United States, against federal agencies, or against federal officials in their official capacities...under Federal Tort Claims Act, but has not consented to be sued for damages for Constitutional violations. See: Deutsch v. Federal Bureau of Prisons, 737 F. Supp. 261, 265(S.D. N.Y.), aff'd 930 F.2d 909(2d Cir. 1991). Such suits for damages must be brought against federal government officials in their individual capacities. See: Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468(1980); also see: Blassingame v. Secretary of Navy, 811 F.2d 65, 69-70(2d Cir. 1987), citing 5 U.S.C. Sec. 702; Gibson v. Mathews, 715 F. Supp. 181, 184085(E.D. Ky. 1989), aff'd 926 F.2d 332(6th Cir. 1991).

[10] Bivens claims under 28 U.S.C. Sec. 1331 & 1343(a),(3),(4)

& (b),(1),(2): If for reasons cited said Plaintiff was not able to proceed under any of the cited statutes and codes cited, this Court still have the power to use the alternative statutes cited under Bivens actions listed above...where a pro se, I.F.P. litigant is concernerd.  Plus, in Plaintiff's jurisdictional statement at Page "5" of the complaint under Supplimental-jurisdiction 28 U.S.C. Sec. 1367, also cites Sec. 1331 and 1343.  The defendants does not make any comment concerning these alternative statutes at all.  These alternative and supplimental jurisdictional statutes were add encase 42 U.S.C. Sec. 1983 could not be used.

[11] The Plaintiff is not a federal prisoner, he is a D.C. Code Offender(defendants misstated this fact at page 4 of its' memo of Points and Authorities. Now, the defendants states at page-one of its M.P.A.(Memorandum of Points and Authorities-hereafter) that the doctrine of sovereign immunity precludes this Court from exercising jurisdiction over the United States Parole Commission("commission-hereafter), or its members in their official capacities under 42 U.S.C. Sec. 1983.  However, when they act under the Color of State Law or D.C. Code Law it is different... defendants' M.P.A. at p.4 ft. n.(3) states: "However, this Circuit has held that USPC members in their individual capacity are acting "under color" of state law where they act pursuant to D.C. Revitalization Act." Fletcher v. District of Columbia, (D.C. Cir.)No. 03-5339. (D.C. Cir. 1/6/06).

[12]  Has the Plaintiff's Claim Been Filed In the Wrong Court?  If it has Plaintiff hopes that this Court will be merciful enough to "transfer" the case to the proper Court rather

-8-

than "dismiss" it outright.  The pro se, I.F.P. Litigant is

paying a filing-fee of $255.00 dollars for filing said action

and should it be outrightly  dismissedm even without prejudice,

the Plaintiff would have to pay that filing fee again in another

Court.  With that said, I move to the Federal Rules of Civil

Procedure(FRCivP) 12(b)(1).  That is one ground the defendants

say the Complaint should be dismised on.  This is a "(1) Lack

of jurisdiction over the subject matter."  I disagree because

as has been stated Fletcher v. D.C., 2006 U.S.App.Lexis 269;

No. 03-5339 "the Commission is within the juridiction of the

District Court and has authority to effectuate Fletcher's release

on reparole", the District Court has jurisdiction to consider

Fletcher's habeas petition.  Fletcher appealed the District

Court's dismissal of his 1983 Claim.  On November 19, 2004,

this Court reversed the District Court's dismissal of Fletcher's

Sec. 1983 Claim and remanded the case for further proceeding

consistent with Garner v. Fletcher, 11, 391 F.3d at 251.  And

the Plaintiff have raised ex post facto issues concerning the

two points deduction from the 1987 Parole Guidelines that would

have dropped two  from his S.F.S.(of 5. points) putting him

in range of granting parole with 3 points for superior program-

ming.  The Plaintiff ex post facto claim need not go through

the Fletcher arguments for this Court's ruling hold that "the

problem here is that the premises underlying the District Court's

analysis are erroneous."

[13]  The Plaintiff amended his jurisdictional statement

to be inclusive of the D.C.Codes Long-arm Statute Law.  District

of Columbia long-arm statute is the only basis upon which per-
sonal jurisdiction may be obtained over defendants who do not
reside within or maintain a principal place of business in the
District of Columbia...<u>Risley v. Hawk</u>, 918 F.Supp. 18(D.D.C.
1996) aff'd 108 F.3d 1396(D.C. Cir. 1997).

(1)  That the Commission operate under the color of state
or D.C. Code Law.  It has authority to grant or deny parole,
pursuant to the D.C. Code, to establish the conditions of release
for all District of Columbia Code Offenders, including offenders
who have been returned to prison upon revocation of parole or
mandatory release.(D.C. Code 24-208).  And that authority include
youth offenders who are committed to prison for treatment and
rehabilitation under D.C. Code 240804(a).  The Commission have
authority to recommend to the Superior Court of the District
of Columbia a reduction in the minimum sentence of a D.C. Code
prisoner, if the Commission deem such recommendation to be appro-
priate.(D.C. Code 24-201(c)).  The Commission have also author-
ity to grant parole to a prisoner who is found to be geriatric,
permanently incapacitated, or to be terminally ill, notwithstand-
ing the minimum term imposed by the sentencing court(D.C. Code
24-263 through 267).  The Commission have authority over all
District of Columbia Felony Offenders who have been released
to parole or mandatory release supervison, including the author-
ity to return such offenders to prison upon an order of revoca-
tion.(D.C. Code 24-206).

(2)  Thus, the Commission have all the power of the former
D. C. Board of Parole, via, The National Capital Revitalization

-10-

and Self-Government Improvement Act of 1997, Public Law 105-33, 111 Stat. 712 and D.C. Code 24-209...It also have all the responsibilities, so why shouldn't it alos have the jurisdiction of the District of Columbia Courts?

(3) Thus, the Commission have business in the District of Columbia, with the District and for the District, for it acts under the Color of D.C. Code. Fletcher v. District of Columbia, 370 F.3d 1223, 1227(D.C. Cir.), reversed in part on other grounds. 39 F.3d 250(D.C. Cir. 2004).

(4) Thus, the D.C. jurisdiction seems the most logical for a case such as this to be judged and tried. The parole hearing was in U.S.P. Big Sandy(some 500 miles from D.C.) and none of the Court judges can be as familiar with D.C. Code Laws as a D.C. Judge. The Commission's stated office is in the District of Maryland(less than a mile or two from the U.S.D.C.), so why shouldn't the D.C. Code Long-arm Law be invoked in favor of the D.C. jurisdiction.

[14] That the U.S. Supreme Court, Dotson and Johnson, Supra, 544 U.S.___, 125 S.Ct. 1242, 1248(2005), 161 L.Ed.2d 253, sets the ground rules for this cause of action. The only difference being that Dotson and Johnson faced off with the Ohio State Parole Board and here the Plaintiff is facing the U.S. Parole Commission, but said Commission acts under color of state law or D.C. Code Law, and for the purpose Sec. 1983 says D.C. is a state. All the questions that the defendants raise in their "M.P.A." are answered in Dotson supra., from how the Plaintiff can sue the Commission under 42 U.S.C. Sec.

-11-

1983, to the ex-post facto being applied to the Parole Guidelines.
These same issues are decided in <u>Fletcher v. District of Columbia</u>,
(decided: 2004), 391 F.3d 250, 251(D.C. Cir. 1-6-06), supra., as
in Dotson supra., also <u>See</u>: <u>Garner v. Jones</u>, 529 U.S. 244, 146
L.Ed.2d 236(2000)(the critical question in ex-post facto issues).

(a)    The defendants via counsels have in addition to F.R.Civ.P.
12(b)(1), also moved pursuant to F.R.Civ.P. 12(b)(3) "improper
venue", and 12(b)(6) "failure to state a claim upon which relief
can begranted", which means that motion to dismiss shall be treated
as one for Summary Judgment and disposed of as provided in Rule
5b.  This rule also requires that there be no geniune issues in
dispute, as to any material fact.

(1)    Thus, Plaintiff, submit that even if his Sec. 1983 action
be ruled against, he still have supplemental jurisdiction under 28
U.S.C. Sec 1331 and Sec. 1343(3)(4) alternative, that the U.S.
Asst. Attorney have failed to mention at all in his motion to dis-
miss.

(2)    Then there are genuine merits of the writ, that are in
dispute, such as, "can plaintiff raise these parole issues under
"42 U.S.C. Sec. 1983, or must he use habeas corpus 28 U.S.C. Sec.
2241; or can the ex-post facto be used against the Commission's
D.C. Code Parole Guidelines promulgate in 2000 or 2001, as oppose
to the D.C. Guidelines used in 1985 or 1987.  Then the Commission
after being informed at the hearing that the 251 months was the
wrong computation for the Plaintiff's "parole eligibility".
Plaintiff is serving a 20 years to Life sentence, twenty years is
equal to 240 months.  However, examiner Haworth refuse to acknow-

-12-

ledge the fact(he was totally indifferent to the fact), and thus,
computed Plaintiff's Base Point Score of "9" on the hit range of
110 months to 140 months.  Thus, the said computation was as follows
110+251+361 to 140+251 months=391 months.  Thus, the BP-9 score
range hit was 361 to 391 months.  So he gave me a 5 year set off
and in fact promised another five year set off and then 2 years set
off and then 2 years set off before Plaintiff would be in range to
be considered for parole.

     (3)  Plus, the Commission computed my age at the time of the
1985 crime to be "41" which added a point to my S.F.C. when he wa
actually  on "40" at the time of the crime(Plaintiff did not turn
"40" until 3/26/85(the F.B.I.'s D.O.B. is 3/26/44) while the crime
happened around January 1985, and Plaintiff was arrested for said
crime on 3/12/85).  So the Commissioners were wrong on that to
and when informed about were totally indifferent to the facts.

     (4)  The Commission computed Plaintiff to have three crimes
of violence(which gave him "4" points on my B.P.S. raising it to
"9" B.P.S.).  The third crime of violence was a 1960 juvenile
case(45 years old).  The case was a robbery charge that the police
accused me and a friend of while we were locked up for fighting
a police officer.  I informed the Commission-Examiner that on that
case we never even had a lawyer or even a trial.  That a juvenile
Court judge had just given us a hearing, found us involved in the
crime and sentenced us to our 18th birthday in the National Train-
ing School for Boys.  The charge for assault disappeared and was
never heard of again.  The Commission and Examiner were informed
that the juvenile charge was unconstitutional because I never had

a lawyer nor a trial. The Examiner was totally indifferent to the facts and failed to investigate the charge to see if it could constitutionally be used to enhance and increase my criminal history to three crimes of violence. At the same time Plaintiff was only 15 years old at the time of the crime and the case by law could not be used against Plaintiff.

(5) That the Commission under D.C. Code have a policy that D.C. Code Parole decisions can not be appealed. So Plaintiff's requests to the Commission for a review of their decisions have fallen on deaf ears, forcing the 1983 suit against the Commission and it's employees.

(6) Thus, in determining whether there is a genuine issue of material fact, the Court must view all facts and all reasonable inferences in favor of the nonmoving party...Matushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348(1986); If there is a dispute over facts that make a difference in the case, the Court must deny summnary judgment...Wilson v. Williams, 997 F.2d 348, 350-51(7th Cir. 1993); Gray v. Spillman, 925 F.2d 90, 95(4th Cir. 1991); Titran v. Ackman, 893 F.2d 145, 147 (7th Cir. 1990).


CONCLUSION

[15] The Plaintiff contrary to the defendants' allegations in its' "M.P.A." does not claim to request his freedom or release from incarceration under the 42 U.S.C. Sec. 1983 Petition-Complaint (or in the alternative and supplemental jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343(3)(a)(4)(a)(b) and the Commission's

-14-

violation of the U.S.Constitutional Ex-Post Facto Clause(Article

I Sec.(9) Clause (3) and (10) and Clause(1).  The Plaintiff seeks

to have the collective errors and use of false information used in

his Parole hearing corrected and a new hearing by different exam-

iners and Commission showed clear callous and hardened indifference

to the factual issue raised concerning the Plaintiff's denial of

a fair and impartial hearing.  And, for those reasons the said

Plaintiff request compensatory and punitive damages with a new

parole hearing.

[16]  The cases cited herein clearly show that habeas corpus

is not the exclusive remedy for a raising and bring a claim against

the Commission by D.C. Code or State Offenders.  See: Wilkinson v.

Dotson, 544 U.S.___(3-7-05), 125 S.Ct. 1242, 1248(2005), 161 L.Ed.2d

253; Fletcher v. D.C., 2006 U.S.App.Lexis 269 No. 03-5339(January

6, 2006, decided); Fletcher v. D.C., 391 F.3d 250, 251(Fletcher II);

Garner v. Jones, 529 U.S. 244, 146 L.Ed.2d 236(2000)(the critical

question ex-post facto challenges to retroactively applied parole/

re-parole regulations; Stoke v. U.S. Parole Comm'n., 362 U.S.App.

D.C. 410, 374 F.3d 1235, 1238(D.C. Cir. 2004)(quoting Padilla, 542

U.S. at 441(explaining Ex Parte Endo. 323 U.S. 283, 89 L.Ed. 243

(1944))).  See: Chatman-Bey, 864 f.2d at 813(improper venue or lack

of personal (as opposed to subject matter) jurisdiction is waived

unless the defense is asserted...); Crawford v. Jackson, 355 U.S.

App.D.C. 282, 323 F.3d 123(D.C.Cir. 2003).

[17]  The Plaintiff bears the burden finaly of establishing

a factual basis for personal jurisdictionover the defendants...

Crane v. New York Zoological Society, 282 U.S.App.D.C. 295, 894

-15-

F.2d 454, 456(D.C. Cir. 1990). Thus, the Court shoudl resolve any
factual discrepancies with regard to the existence of personal
jurisdiction(and the D.C. Codes Long-arm statute), in favor of the
Plaintiff...Second Amendment Found v. U.S. Conference of Mayors,
348 U.S.App.D.C. 238, 274 F.3d 521, 524(D.C. Cir. 2001); U.S. v.
Phillip Morris, Inc., 116 F.Supp.2d 116, 120, n.4(D.C. Cir. 2000)
(citing R. Miller Federal Practrive and Procedure Sectiont 1351
(1990)).

[18]   That Plaintiff's belief is that "specific" personal
jurisdiction under D.C. code Section 13-423, the District of
Columbia's Long-arm statute has been established because the
Commission must have systematic and continuous contact with the
District of Columbia under color of D.C. Code Laws...The require-
ments of due process are said to be satisfied when in personam
jurisdiction is asserted over a nonresident corporate defendant
that has certain minimum contacts with [the forum] such that the
maintenance of the suit does not offend traditional notions of
fair play and substantial justice. See: Gorman v. Ameritrade
Holding Corp., 352 U.S.App.D.C. 229, 293 F.3d 506, 509(D.C. Cir.
2002); also, Helicopteros Nacionales de Columbia, S.A.V. Hall,
466 U.S. 408 414, 80 L.Ed.2d 404,  104 S.Ct. 1868(1984)(quoting
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L.Ed. 95, 66
S.Ct. 154(1945). Thus, these minimum contacts must be grounded in
"some act by which the defendant purposefully avails itself of
the privilege of conducting activities with the forum state, thus
invoking the benefits and privileges of its laws." See: Asahi
Metal Industry v. Superior Court of California, 480 U.S. 102, 109

, 94 L.Ed.2d 92, 107 S.Ct. 1026(1987).  In short, a Court will find

minimum contacts in any case where the defendant's conduct is such

that "he should reasonably anticipate being hauled into Court "in

the forum.  See: World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

286, 297, 62 L.Ed.2d 490, 100 S.Ct. 559(1980).

[19]  Thus, in the instant case, the Plaintiff has met his

burden of showing "specific" personal jurisdiction over the Commis-

sion which has a continuing contact presence with the District of

Columbia, Section 13-423 makes clear that, under the D.C. Code's

Long-arm Statute, a Claim for relief arising from acts enumerated

in this section may be asserted, such as D.C. Code 13-432(a)(1)(4)

(b), do apply to the Commission.

[20]  The Defendants opened their motion's defense in their

official capacities, while taking note at Motion To Dismiss -

footnote(1) that, in such a case, proper Service of process is

fundamental to the Court's jurisdiction over the individual defend-

ants...citing Murphy Brothers, Inc. V. Michetti Pipe Stringing, 526

U.S. 344, 350(1999).  While, the Plaintiff did sue the named

Commission and its members name plus one John Doe member in their

individual capacities the Court granted Plaintiff motion to have

the U.S. Marshall Service serve the Summons and Complaint on the

defendants.  In fact the Courts have generally held that any delay

by the Marshal constitutes "good cause" for failure to properly

complete service within 120 days limit; they do not blame pro se

litigants for the said Marshal's mistakes...See: Welch v. Folsom,

925 F.2d at 670(and cited cases); Puett v. Blandford,912 F.2d 270,

275(9th Cir. 1990); Fowler v. Jones,899 F.2d 1088, 1094 n.5(11th

-17-

Cir. 1990). Thus, Plaintiff request on the Court is to have the U.S. Marshal Service properly serve the Defendants in their individual capacities, and if the fact that defendants improper service is contentious to or with the outcome of defendant's motion than Plaintiff request that ruling on motion be stayed until U.S. Marshal's properly serve Defendants in their individual capacities, which maybe the difference allowing a ruling in Plaintiff favor. See: F.R.Civ.P. 4(i)(c)(3).

[21] Plaintiff properly request striking the claim as a cause of action pursuant to the Religious Land Use and Institutionalized Persons act of 2000("RLUIPA"), 42 U.S.C. Sec. 2000 cc-1. Its' inclusion herein was an oversight-mistake on the part of the Plaintiff.

WHEREFORE, the Plaintiff submits that the probabilistic impact herein is the mistake made by the defendant's miscalculation of how the Plaintiff's claims are presented pursuant to 42 U.S.C. Sec. 1983 petition, and pursuant to the alternative supplemental jurisdiction, pursuant to 28 U.S.C. Sec. 1367; Sec. 1331 & 1343; and violation of the Ex-Post Facto Clause to the Constitution and Due Process under 5th and 14th Amendments-U.S.C.

The Plaintiff prays that should this Court rule unfavorable toward his petition, that this Court hereby consider transferring said Writ to the District in Chevy Chase, Maryland.

However, the humble Plaintiff's final prayer is that this Honorable Court after all evidence is considered-in-the-interest-of-justice, Rule in his favor, dismissing Defendant's "Motion to Dismiss."

-18-

Respectfully Submitted,

*Abdus-Shahid M.S. Ali*

Abdus-Shahid M.S. Ali, prose,
USP #03201-000
DCDC# 136-476
P. O. Box 2068
Inez, Kentucky 41224-2068

6/9/06

cc: Plaintiff, A.S.M.S. Ali,
    Defendants' Counselor,
    Kathleen Konopka #495257
    Asst. United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Abdus--Shahid M.S. Ali,          )
[USP-Reg.No.03201-000 ]          )
[  DCDC No, 136-476   ]          )
P.O.Box 2068/USP-Big Sandy       )        Civil Action No. 06-0235
Inez, Kentucky 41224             )
            Plaintiff,           )        Judge:Lamberth
                                 )                U.S. District Court Judge
    -V-                          )
                                 )        Calendar:
U.S. Parole Commission, et al., )
            Defendants'          )        Track
                                 )

THE PLAINTIFF STATES THAT "THERE ARE GENUINE ISSUES IN DISPUTE

[1] Plaintiff submites to this Court that there are a number of issues
in dispute. Such as, that only the habeas Corpus writ can be used to
raise issue with PAROLE Commission's decision. Section 1983 can be us-
ed so long as one is not requesting release; but for a new hearing; or
the correction of false information used in the hearing..etc.

[2] The jurisdiction and venue issues are in dispute because Plaintiff
zmended his jurisdiction statement to be inclusive of D.C.Code long-arm
statute which allows personal specific jurisdiction over defendants who
are not domiciled in the District but who do a minimum and amount of
business with or in the District...and can expect to be halled into
Court at any time under the color of D.C. Code law.

[3] Calculation of months needed to go up for parole is in dispute.

[4] It is disputed that juvinile crime in this case can used to foster
three crimes of violence against Plaintiff at his parole hearing.

[5] That it is disputed that Ex Post Facto Law  must be used that was
in force at the time of crime, as oppose to 2001 new parole-guidelines.

[6] That the age of the Plaintiff at the time of the crime is in dispute.

[7]It disputed that Commission has absolute-innunity under D.C.Code. ·

Respectfully Submitter,            6/9/06
/s/ Abdus-Shahid M.S. Ali

## CERTIFICATE OF SERVICE

I, _Abdus-Shahid M.S. Ali, Plaintiff_, hereby certify that

I have served a true and correct copy of the foregoing _Motion_ on the

below:

[a.] [TO] United states District Court for the District of
Columbia...Office Of The Clerk...U.S. Courthouse...333
Constitution Avenue, N.W., Washington, D. C. 2001
*One-original copy and two...copies.

[b] Kathleen Konopka, Asst. U.S. Attorney
555 - 4th Street, N. W.
Judiciary Center Building
Room - E4412
Washington, D.C. 20001
*One copy...

Which is deemed filed at the time it was delivered to

prison authorites for forwarding, SEE: HOUSTON -V- LACK, 101 L.Ed.2d 245(1988).

Upon the defendant/ defendant and his attorney/ attorney of record, by place-

ing and/or the same in the United States Maile Box at the Facility provided

for legal mail/Court Mail...on this 4th day of June May 2006,

The above stated is affirmed by the undersigned under

and pursuant to 28 U.S.C. § 1746., Under the penalty of perjury.

[Note:] The warden have just
ended her total "Lock Down"
of this facility... Thus, I should
be able to aet the necessary copies
to send the Court and the defendants
Counselor the proper Copies.
Thus, the papers having been typed
and Copied this 9th day of June
2006, are so mailed to the above
cited addresses. It is so
affired under penalty of
Perjury pursuant to title
28 U.S.C. Sec. 1746.

CC:Files

/s/ Abdus-Shahid M.S. Ali (Pro-se)
(USP-Reg.#-03201-000)(DCDC#-136-476)

P. O. Box 2068
Olney, Kentucky 41224

/s/ Abdus-Shahid M.S. Ali

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Abdus--Shahid M.S. Ali,<br>[USP-Reg.No.03201-000 ]<br>[  DCDC No, 136-476   ]<br>P.O.Box 2068/USP-Big Sandy<br>Inez, Kentucky 41224<br>                    Plaintiff,<br><br>       -V-<br><br>U.S. Parole Commission, et al.,<br>                    Defendants' | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. <u>06-0235        </u><br><br>Judge:<u>Lamberth</u>,Royce C.      <br>                 U.S. District Court Judge<br><br>Calendar:<br><br>Track |

------------------------------------------------------------------

PLAINTIFF'S APPOSING AFFIDAVIT TO DEFENDANTS' MOTION TO DISMISS THE

COMPLAINT AND THE DECLARATIONS OF DOUGLAS THIESSEN'S AFFIDAVIT AS A

COUNSEL AND ASSISTANT GENERAL COUNSEL AT U.S. PAROLE COMMISSION:

------------------------------------------------------------------

       I, Abdul-Shahid M.S. Ali, the cited Plaintiff herein, pur-

suant to the provisions of 28 U.S.C. § 1746, declare as follows:

[1.] I am the pro-se litigant domiciled at U.S.P. Big Sandy P.O.

Box 2068 in Inez, Kentucky 41224.

[2.] Mr. Douglas W. Thiessen acknowledged that he is the attorney

and assistant general counsel at the U.S. Parole commission

("Commission" herein after") at the central office at 5550

Friendship Boulevard in suite 420, Chevy Chase, Md., 20815.

[3.] Mr. D.C. Thiessen also acknowledges that he is familiar with

the Commission's administrative structure, as well as the defend-

ants named in this suit.  However, Mr. D.C. Thiessen does not

give the names, addresses or domicile location of the John Doe

Commissioner that must have had to "agree with the U.S. Parole

Commission Examiner, Robert J. Haworth.  Is it possible that this

defendant resides in the District of Columbia?

[4.] When Commission Examiner Robert J. Haworth made the recomme-

-2-

ndation of a five years set off for Mr. A.S.M.S. Ali, it was necessary for at least one commissioner to affirm-agreement with him, that is the Plaintiff's John Doe defendant cited in this suit but said attorney and assistant general counsel at the U.S. Parole Commission have not acknowledge who that John Doe Commissioner is.

[5.] It is acknowledged via, Plaintiff, that in the District of Columbia there are three statutory bases for the exercise of personal jurisdiction over a defendant/corporation: a plaintiff may establish "general" personal jurisdiction under D.C. Code sec. 13-334(a) (activity), or D.C. Code 13-422(a) (location), or a plaintiff may establish specific personal jurisdiction under D.C. Code Sec. 13-423; the District of Columbia's long-arm-statute. See: Lee v. State Comp. Ins. Fund, ___ F.Supp.2d ___ (D.D.C. July 12, 2005).

[6.] That the Plaintiff herein request venue amendment to be enclusive of the D.C. Code Long-Arm Statutes and Plaintiff further states that even if the defendants are not domiciled within the District of Columbia does not mean that this Court can not entertain this Cause of action.

[7.] That the District of Columbia Long-Arm Statute is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia . See: Risley v. Hawk, 918 F.Supp. 18 (D.D.C. 1996) Affd. 108 F.3d 1396 (D.C. Cir. 1997).

[8.]  That the Commission (though a U.S. agency of the Department of Justice) in acting as a board of Parole for the District of Columbia it is acting in the capacity of a state agency for

the D.C.Code offenders via., Congressional decree...Subpart.C.D.C. Code- Prisoners & Paroles: §2.70(a)..."The U.S. Parole Commission **shall exercise authority over District of Columbia Code offenders pursuant to § 11231 of the National Capital Revitalization ans Self-Go-**vernment Improvement Act of 1997, Public Law 105-33, 111 Stat. 712 and D.C.Code 24-409. Thusly, federal officials may act under color of State law if they are carrying out state law in particular case. SEE:.... Terrell v. Petrie, 763 F.Supp. 1342, 1344 (E.D. Va. 1991 aff'd 952 F.2d 397 (4th Cir. 1991)...See attached Points and Autorities...opposition to defendants' Motion To Dismiss" Complaint.

[9]The Plaintiff's Counsel filed on May 12th, 2006 and complained in footnote(1) about the manner in which the defendants were served by the U.S.Marshall Service and that it was not proper to carry said defendants in their individual capacity. Then the Court on May 15 issued, granted motion to allow service by the U.S. Marshall Service. The Plaintiff have never seen the Courts order on that matter and do not understand how the Counselor for the defendants can object to something befor it happen? At any-rate the Plaintiff requested that the Court allow the U.S. Marshall service pursuant to F.R.Civ.P. 4(c) (2) serve the complaint, Notice and summons on the defendants. Nether the the U.S. Marshall Service nor the Clerk of the Court notified the said Plaintiff that the summons had been served. SO the Plaintiff had not contorl over the so-called inproper serving of the complaint on the defendants...However, if it was done wrong we need to do it the right way if possible to do so ASAP..

[10] The defendants seeks to dismiss said petition without reaching the merit of the case...the Court in the interest of justice does not have to dismiss the as such, it can simply transfer the case to it's proper jurisdiction if in fact it can not be entertained under the D.C.

-4-

Codes long-arm statutes...See Points and authorities  herein.

I declare under penalty of perjury that the foregone is true and correct

to the best of my knowledge...and is prepaired by the pro se., litigant.

/s/ *Abdus Shahid M.S. Ali*

      Abdus-Shahid M.S. Ali. Pro se.,
      [USP-#o32o1-000][DCDC#136-476]
      P.O.BOX 2068///USP-Big Sandy
         Inez,  Kentucky  41224-2068

Dated: May 20th, 20006 at
USP-Big Sandy/Inez,KY.41224

16 FL[E]- 2d 253, 125 S. Ct. 1242, 1248, (2005)
544 U.S. ___

(Slip Opinion)                    OCTOBER TERM, 2004

### Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued. ·
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the. reader.
See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

### Syllabus

## WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL. *v.* DOTSON ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 03–287.   Argued December 6, 2004—Decided March 7, 2005

Respondents Dotson and Johnson are Ohio state prisoners. After pa-
role officials determined that Dotson was not eligible for parole and
that Johnson was not suitable for parole, they brought separate ac-
tions for declaratory and injunctive relief under 42 U. S. C. §1983,
claiming that Ohio's parole procedures violate the Federal Constitu-
tion. In each case, the Federal District Court concluded that a §1983
action does not lie and that the prisoner would have to seek relief
through a habeas corpus suit. The Sixth Circuit ultimately consoli-
dated the cases and reversed, finding that the actions could proceed
under §1983.

*Held:* State prisoners may bring a §1983 action for declaratory and in-
junctive relief challenging the constitutionality of state parole proce-
dures; they need not seek relief exclusively under the federal habeas
corpus statutes. Pp. 3–10.

(a) Ohio argues unsuccessfully that respondents' claims may only
be brought in federal habeas (or similar state) proceedings because a
state prisoner cannot use a §1983 action to challenge "the fact or du-
ration of his confinement," *e.g., Preiser* v. *Rodriguez,* 411 U. S. 475,
489, and respondents' lawsuits, in effect, collaterally attack their con-
finements' duration. That argument jumps from a true premise (that
in all likelihood the prisoners hope their suits will help bring about
earlier release) to a faulty conclusion (that habeas is their sole ave-
nue for relief). This Court's case law makes clear that the connection
between the constitutionality of the prisoners' parole proceedings and
release from confinement is too tenuous here to achieve Ohio's legal

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

Cite as: 544 U. S. ____ (2005)

Opinion of the Court

# SUPREME COURT OF THE UNITED STATES

No. 03-287

REGINALD A. WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL., PETITIONERS v. WILLIAM DWIGHT DOTSON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 7, 2005]

JUSTICE BREYER delivered the opinion of the Court.

Two state prisoners brought an action under 42 U. S. C. §1983 claiming that Ohio's state parole procedures violate the Federal Constitution. The prisoners seek declaratory and injunctive relief. The question before us is whether they may bring such an action under Rev. Stat. §1979, 42 U. S. C. §1983, the Civil Rights Act of 1871, or whether they must instead seek relief exclusively under the federal habeas corpus statutes. We conclude that these actions may be brought under §1983.

I

The two respondents, William Dotson and Rogerico Johnson, are currently serving lengthy terms in Ohio prisons. Dotson began to serve a life sentence in 1981. The parole board rejected his first parole request in 1995, and a parole officer, after reviewing Dotson's records in the year 2000, determined that he should not receive further consideration for parole for at least five more years. In reaching this conclusion about Dotson's parole

---

2                    WILKINSON v. DOTSON

Syllabus

door-closing objective. From *Edwards* v. *Balisok*, 520 U. S. 641, this Court has developed an exception from §1983's otherwise broad scope for actions that lie "within the core of habeas corpus." *Preiser, supra,* at 487, i.e., where a state prisoner requests present or future release. Section 1983 remains available for procedural challenges where success *would not necessarily spell* immediate or speedier release for the prisoner, but the prisoner cannot use §1983 to obtain relief where success *would necessarily demonstrate* the invalidity of confinement or its duration. *e.g., Heck* v. *Humphrey,* 512 U. S. 477. Here, respondents' claims are cognizable under §1983, i.e., they do not fall within the implicit habeas exception. They seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). See *Wolff, supra,* at 554–555. Neither prisoner seeks an injunction ordering his immediate or speedier release into the community. See, *e.g., Preiser, supra,* at 500. And as in *Wolff,* a favorable judgment will not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Heck, supra,* at 487. Success for Dotson does not mean immediate release or a shorter stay in prison; it means at most a new eligibility review, which may speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term. Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser, supra,* at 489. Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. See *Balisok, supra,* at 648. Pp. 3–8.

(b) Ohio's additional arguments—(1) that respondents' §1983 actions cannot lie because a favorable judgment would "necessarily imply the invalidity of [their] *sentence[s],*" *Heck, supra,* at 487 (emphasis added), which sentences include particular state parole procedures; and (2) that a decision for them would violate principles of federal/state comity by opening the door to federal court without prior exhaustion of state-court remedies—are not persuasive. Pp. 8–10.

329 F. 3d 463, affirmed and remanded.

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SCALIA, SOUTER, THOMAS, and GINSBURG, JJ., joined. SCALIA, J., filed a concurring opinion, in which THOMAS, J., joined. KENNEDY, J., filed a dissenting opinion.

eligibility, the officer used parole guidelines first adopted in 1998, after Dotson began to serve his term. Dotson claims that the retroactive application of these new, harsher guidelines to his preguidelines case violates the Constitution's Ex Post Facto and Due Process Clauses. He seeks a federal-court declaration to that effect as well as a permanent injunction ordering prison officials to grant him an "immediate parole hearing in accordance with the statutory laws and administrative rules in place when [he] committed his crimes." App. 20 (Dotson Complaint, Prospective Declaratory and Injunctive Relief, ¶ 3).

Johnson began to serve a 10- to 30-year prison term in 1992. The parole board considered and rejected his first parole request in 1999, finding him unsuitable for release. In making this determination, the board applied the new 1998 guidelines. Johnson too claims that the application of these new, harsher guidelines to his preguidelines case violated the Constitution's Ex Post Facto Clause. He also alleges that the parole board's proceedings (by having too few members present and by denying him an adequate opportunity to speak) violated the Constitution's Due Process Clause. Johnson's complaint seeks a new parole hearing conducted under constitutionally proper procedures and an injunction ordering the State to comply with constitutional due process and ex post facto requirements in the future.

Both prisoners brought §1983 actions in federal court. In each case, the Federal District Court concluded that a §1983 action does not lie and that the prisoner would have to seek relief through a habeas corpus suit. Dotson v. Wilkinson, No. 3:00 CV 7303 (ND Ohio, Aug. 7, 2000); Johnson v. Ghee, No. 4:00 CV 1075 (ND Ohio, July 16, 2000). Each prisoner appealed. The Court of Appeals for the Sixth Circuit ultimately consolidated the two appeals and heard both cases en banc. The court found that the actions could proceed under §1983, and it reversed the

lower courts. 329 F. 3d 463, 472 (2003). Ohio parole officials then petitioned for certiorari, and we granted review.

II

This Court has held that a prisoner in state custody cannot use a §1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U. S. 475, 489 (1973); see also Wolff v. McDonnell, 418 U. S. 539, 554 (1974); Heck v. Humphrey, 512 U. S. 477, 481 (1994); Edwards v. Balisok, 520 U. S. 641, 648 (1997). He must seek federal habeas corpus relief (or appropriate state relief) instead.

Ohio points out that the inmates in these cases attack their parole-eligibility proceedings (Dotson) and their parole-suitability proceedings (Johnson) only because they believe that victory on their claims will lead to speedier release from prison. Consequently, Ohio argues, the prisoners' lawsuits, in effect, collaterally attack the duration of their confinement; hence, such a claim may only be brought through a habeas corpus action, not through §1983.

The problem with Ohio's argument lies in its jump from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief). A consideration of this Court's case law makes clear that the connection between the constitutionality of the prisoners' parole proceedings and release from confinement is too tenuous here to achieve Ohio's legal door-closing objective.

The Court initially addressed the relationship between §1983 and the federal habeas statutes in Preiser v. Rodriguez, supra. In that case, state prisoners brought civil rights actions attacking the constitutionality of prison disciplinary proceedings that had led to the deprivation of

their good-time credits. *Id.*, at 476. The Court conceded that the language of §1983 literally covers their claims. See §1983 (authorizing claims alleging the deprivation of constitutional rights against every "person" acting "under color of' state law). But, the Court noted, the language of the federal habeas statutes applies as well. See 28 U. S. C. §2254(a) (permitting claims by a person being held "in custody in violation of the Constitution"). Moreover, the Court observed, the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally "has been accepted as the specific instrument to obtain release from [unlawful] confinement." *Preiser,* 411 U. S., at 486. Finally, habeas corpus actions require a petitioner fully to exhaust state remedies, which §1983 does not. *Id.,* at 490–491; see also *Patsy* v. *Board of Regents of Fla.,* 457 U. S. 496, 507 (1982). These considerations of linguistic specificity, history, and comity led the Court to find an implicit exception from §1983's otherwise broad scope for actions that lie "within the core of habeas corpus." *Preiser,* 411 U. S., at 487.

Defining the scope of that exception, the Court concluded that a §1983 action will not lie when a state prisoner challenges "the fact or duration of his confinement," *id.,* at 489, and seeks either "immediate release from prison," or the "shortening" of his term of confinement, *id.,* at 482. Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks "the very duration of . . . physical confinement," *id.,* at 487–488, and thus lies at "the core of habeas corpus," *id.,* at 487. Therefore, the Court held, the *Preiser* prisoners could not pursue their claims under §1983.

In *Wolff* v. *McDonnell, supra,* the Court elaborated the contours of this habeas corpus "core." As in *Preiser,* state prisoners brought a §1983 action challenging prison officials' revocation of good-time credits by means of constitu-

tionally deficient disciplinary proceedings. 418 U. S., at 553. The Court held that the prisoners could not use §1983 to obtain restoration of the credits because *Preiser* had held that "an injunction restoring good time improperly taken is foreclosed." 418 U. S., at 555. But the inmates *could* use §1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid. *Ibid.* They could also seek "by way of ancillary relief[] an otherwise proper injunction enjoining the *prospective* enforcement of invalid prison regulations." *Ibid.* (emphasis added). In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked only the "wrong procedures, not . . . the wrong result (i.e., [the denial of] good-time credits)." *Heck, supra,* at 483 (discussing *Wolff*).

In *Heck,* the Court considered a different, but related, circumstance. A state prisoner brought a §1983 action for damages, challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. 512 U. S., at 479. The Court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.,* at 486. And it held that where "establishing the basis for the damages claim *necessarily demonstrates the invalidity of the conviction,*" *id.,* at 481–482, a §1983 action will not lie "unless . . . the conviction or sentence has already been invalidated," *id.,* at 487. The Court then added that, where the §1983 action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment . . . , the action should be allowed to proceed." *Ibid.*

Finally, in *Edwards* v. *Balisok, supra,* the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in *Preiser* and *Wolff.*

Opinion of the Court

Balisok sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." 520 U.S., at 643. Applying *Heck*, the Court found that habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages, because the "principal procedural defect complained of," namely deceit and bias on the part of the decisionmaker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." 520 U.S., at 646. Hence, success on the prisoner's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." *Id.*, at 648. Nonetheless, the prisoner's claim for an injunction barring *future* unconstitutional procedures did *not* fall within habeas' exclusive domain. That is because "[o]rdinarily," a prayer for such prospective relief will not "necessarily imply" the invalidity of a previous loss of good-time credits." *Ibid.*

Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to §1983's coverage where the claim seeks—not where it simply "relates to"—"core" habeas corpus relief, *i.e.*, where a state prisoner requests present or future release, Cf. *post*, at 5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate . . . to" the duration of confinement). *Wolff* makes clear that §1983 remains available for procedural challenges where success in the

Opinion of the Court

action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner *cannot use* §1983 to obtain damages where success *would necessarily imply* the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok, like Wolff,* demonstrates that habeas remedies do not displace §1983 actions where success in the civil rights suit would *not necessarily vitiate the legality of* (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's §1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Applying these principles to the present case, we conclude that respondents' claims are cognizable under §1983, *i.e.*, they do not fall within the implicit habeas exception. *Dotson* and *Johnson* seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). See *Wolff, supra*, at 554-555. Neither respondent seeks an injunction ordering his immediate or speedier release into the community. See *Preiser*, 411 U.S., at 500; *Wolff, supra*, at 554. And as in *Wolff*, a favorable judgment will not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Heck, supra*, at 487. Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. See Ohio Rev. Code Ann. §2967.03 (Lexis 2003) (describing the parole authority's broad discretionary powers); *Inmates of*

Opinion of the Court

*Orient Correctional Inst.* v. *Ohio State Adult Parole Auth.*, 929 F. 2d 233, 236 (CA6 1991) (same); see also Tr. of Oral Arg. 18 (petitioners' counsel conceding that success on respondents' claims would not inevitably lead to release). Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser*, 411 U. S., at 489. Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. See *Balisok, supra*, at 648.

The dissent disagrees with our legal analysis and advocates use of a different legal standard in critical part because, in its view: (1) a habeas challenge to a sentence (a "core" challenge) does not necessarily produce the prisoner's "release" (so our standard "must be ... wrong"), see *post*, at 1–2, 4; and (2) *Heck's* standard is irrelevant because *Heck* concerned only damages, see *post*, at 4. As to the first, we believe that a case challenging a sentence seeks a prisoner's "release" in the only pertinent sense: It seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement; the fact that the State may seek a *new* judgment (through a new trial or a new sentencing proceeding) is beside the point. As to the second, *Balisok* applied *Heck's* standard and addressed a claim seeking not only damages, but also a separate declaration that the State's procedures were unlawful. See 520 U. S., at 643, 647–648.

III

Ohio makes two additional arguments. First, Ohio points to language in *Heck* indicating that a prisoner's §1983 damages action cannot lie where a favorable judgment would "necessarily imply the invalidity of his conviction *or sentence*." 512 U. S., at 487 (emphasis added). Ohio then argues that its parole proceedings are part of

---

Opinion of the Court

the prisoners' "sentence[s]"—indeed, an aspect of the "sentence[s]" that the §1983 claims, if successful, will invalidate.

We do not find this argument persuasive. In context, *Heck* uses the word "sentence" to refer not to prison procedures, but to substantive determinations as to the length of confinement. See *Muhammad* v. *Close*, 540 U. S. 749, 751, n. 1 (2004) (*per curiam*) ("[T]he incarceration that matters here is the incarceration ordered by the original judgment of conviction"). *Heck* uses the word "sentence" interchangeably with such other terms as "continuing confinement" and "imprisonment." 512 U. S., at 483, 486; see also *Balisok, supra*, at 645, 648 (referring to the invalidity of "the judgment" or "punishment imposed"). So understood, *Heck* is consistent with other cases permitting prisoners to bring §1983 challenges to prison administrative decisions. See, *e.g., Wolff*, 418 U. S., at 554–555; *Muhammad*, 540 U. S., at 754; see also *ibid.* (rejecting "the mistaken view ... that *Heck* applies categorically to all suits challenging prison disciplinary proceedings"). Indeed, this Court has repeatedly permitted prisoners to bring §1983 actions challenging the conditions of their confinement—conditions that, were Ohio right, might be considered part of the "sentence." See, *e.g., Cooper* v. *Pate*, 378 U. S. 546, 251 (1964) (*per curiam*); *Wilwording* v. *Swenson*, 404 U. S. 249, 251 (1971) (*per curiam*). And this interpretation of *Heck* is consistent with *Balisok*, where the Court held the prisoner's suit *Heck*-barred not because it sought nullification of the disciplinary procedures but rather because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence. 520 U. S., at 646.

Second, Ohio says that a decision in favor of respondents would break faith with principles of federal/state comity by opening the door to federal court without prior

WILKINSON v. DOTSON

Opinion of the Court

exhaustion of state-court remedies. Our earlier cases, however, have already placed the States' important comity considerations in the balance, weighed them against the competing need to vindicate federal rights without exhaustion, and concluded that prisoners may bring their claims without fully exhausting state-court remedies so long as their suits, if established, would not necessarily invalidate state-imposed confinement. See Part II, *supra.* Thus, we see no reason for moving the line these cases draw—particularly since Congress has already strengthened the requirement that prisoners exhaust state administrative remedies as a precondition to any §1983 action. See 42 U. S. C. §1997e(a); *Porter* v. *Nussle,* 534 U. S. 516, 524 (2002).

For these reasons, the Sixth Circuit's judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

# SUPREME COURT OF THE UNITED STATES

No. 03–287

REGINALD A. WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL., PETITIONERS *v.* WILLIAM DWIGHT DOTSON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 7, 2005]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring.

I join the Court's opinion, which in my view reads *Heck* v. *Humphrey,* 512 U. S. 477 (1994), and *Edwards* v. *Balisok,* 520 U. S. 641 (1997), correctly. And I am in full agreement with the Court's holding that "[b]ecause neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus'" and both may be brought under Rev. Stat. §1979, 42 U. S. C. §1983. *Ante,* at 8. I write separately to note that a contrary holding would require us to broaden the scope of habeas relief beyond recognition.

*Preiser* v. *Rodriguez,* 411 U. S. 475 (1973), and the cases that follow it hold that Congress, in enacting §1983, preserved the habeas corpus statute as the sole authorization for challenges to allegedly unlawful confinement. *Id.,* at 489–490. At the time of §1983's adoption, the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody. See Act of Feb. 5, 1867, §1, 14 Stat. 386. Congress shortly thereafter amended the statute, authorizing federal habeas courts to "dispose of the party as law and justice require," Rev. Stat.

§761. The statute reads virtually the same today, 28 U. S. C. §2243 ("dispose of the matter as law and justice require"). We have interpreted this broader remedial language to permit relief short of release. For example, when a habeas petitioner challenges only one of several consecutive sentences, the court may invalidate the challenged sentence even though the prisoner remains in custody to serve the others. See *Peyton* v. *Rowe*, 391 U. S. 54, 67 (1968); *Walker* v. *Wainwright*, 390 U. S. 335, 336–337 (1968) (per curiam). Thus, in *Preiser* we held the prisoners' §1983 action barred because the relief it sought—restoration of good-time credits, which would shorten the date on which they would be transferred to supervised release—was available in habeas. See 411 U. S., at 487–488.

It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a "quantum change in the level of custody," *Graham* v. *Broglin*, 922 F. 2d 379, 381 (CA7 1991) (Posner, J.), such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody. That is what is sought here: the mandating of a new parole hearing that may or may not result in release, prescription of the composition of the hearing panel, and specification of the procedures to be followed. A holding that this sort of judicial immersion in the administration of discretionary parole lies at the "core of habeas" would utterly sever the writ from its common-law roots. Cf. *Bell* v. *Wolfish*, 441 U. S. 520, 526, n. 6 (1979) (treating as open the question whether prison-conditions claims are cognizable in habeas). The dissent suggests that because habeas court may issue a conditional writ ordering a prisoner released unless the State conducts a new sentencing proceeding, the court may also issue a conditional writ

ordering release absent a new *parole* proceeding. See *post*, at 2–3, 4 (opinion of KENNEDY, J.). But the prisoner who shows that his sentencing was unconstitutional is actually entitled to release, because the judgment pursuant to which he is confined has been invalidated; the conditional writ serves only to "delay the release . . . in order to provide the State an opportunity to correct the constitutional violation." *Hilton* v. *Braunskill*, 481 U. S. 770, 775 (1987); see *In re Bonner*, 151 U. S. 242, 259, 262 (1894) (conditional writ for proper resentencing). By contrast, the validly sentenced prisoner who shows only that the State made a procedural error in denying discretionary parole has *not* established a right to release, and so cannot obtain habeas relief—conditional or otherwise. Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release. Conditional writs are not an all-purpose weapon with which federal habeas courts can extort from the respondent custodian forms of relief short of release, whether a new parole hearing or a new mattress in the applicant's cell.

Petitioners counter that we need not be concerned about this expansion of habeas relief because prisoners will naturally prefer §1983 to habeas corpus, in light of the burdensome prerequisites attached to habeas relief by 28 U. S. C. §2254. But those prerequisites, such as exhaustion of state remedies, reliance on "clearly established Federal law," and deference to previous findings of fact, apply only to "a person in custody pursuant to the judgment of a State court," §§2254(b)(1), (d)(1), (e)(1). By contrast, §2243's delineation of the scope of permissible relief applies to *all* federal habeas proceedings, whether the petitioner is in federal or state custody, see §2241(c). Thus, while §2254 may shield petitioners and their fellow state wardens from the impact of the broadened writ they urge us to create, not every warden responding to a ha-

4

SCALIA, J., concurring

beas petition can claim the same protection. And federal prisoners, whose custodians are not acting under color of state law and hence cannot be sued under §1983, have greater incentives to shoehorn their claims into habeas.

Finally, I note that the Court's opinion focuses correctly on whether the claims respondents pleaded were claims that may be pursued in habeas—not on whether respondents can be successful in obtaining habeas relief on those claims. See, e.g., ante, at 6. Thus, for example, a prisoner who wishes to challenge the length of his confinement, but who cannot obtain federal habeas relief because of the statute of limitations or the restrictions on successive petitions, §§2244(a), (b), (d), cannot use the unavailability of federal habeas relief in his individual case as grounds for proceeding under §1983. Cf. Preiser, supra, at 489–490. It would wholly frustrate explicit congressional intent to hold that [state prisoners] could evade [the exhaustion] requirement by the simple expedient of putting a different label on their pleadings").

With these observations, I join the Court's opinion.

---

Cite as: 544 U. S. ____ (2005)

KENNEDY, J., dissenting

1

SUPREME COURT OF THE UNITED STATES

No. 03–287

REGINALD A. WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL., PETITIONERS v. WILLIAM DWIGHT DOTSON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 7, 2005]

JUSTICE KENNEDY, dissenting.

In this case, the Court insists that an attack on parole proceedings brought under Rev. Stat. §1979, 42 U. S. C. §1983, may not be dismissed on the grounds that habeas corpus is the exclusive remedy for such claims. The primary reason offered for the Court's holding is that an order entitling a prisoner to a new parole proceeding might not result in his early release. That reason, however, applies with equal logic and force to a sentencing proceeding. And since it is elementary that habeas is the appropriate remedy for challenging a sentence, something must be quite wrong with the Court's own first premise.

Everyone knows that when a prisoner succeeds in a habeas action and obtains a new sentencing hearing, the sentence may or may not be reduced. The sentence can end up being just the same, or perhaps longer. The prisoner's early release is by no means assured simply because the first sentence was found unlawful. Yet no one would say that an attack on judicial sentencing proceedings following conviction may be raised through an action under §1983. The inconsistency in the Court's treatment of sentencing proceedings and parole proceedings is thus difficult to justify. It is, furthermore, in tension with our

precedents. For these reasons, I write this respectful dissent.

Challenges to parole proceedings are cognizable in habeas. Here respondents challenge parole determinations that not only deny release (or eligibility for consideration for release) but also guarantee continued confinement until the next scheduled parole proceeding. See *ante*, at 1–2 (majority opinion). If a parole determination is made in a proceeding flawed by errors of constitutional dimensions, as these respondents now allege, their continued confinement may well be the result of constitutional violation. Respondents thus raise a cognizable habeas claim of being "in custody in violation of the Constitution." 28 U. S. C. §2241(c)(3); see also 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §9.1, pp. 431–437, and n. 33 (4th ed. 2001) (noting that "[t]he range of claims cognizable in federal habeas corpus" includes challenges to 'the duration of sentence (including on the basis of parole. good time, and other prison- or administratively. as opposed to court-administered rules)" and citing numerous cases to that effect). In recognition of this elementary principle, this Court and the courts of appeals have adjudicated the merits of many parole challenges in federal habeas corpus proceedings. See, e.g., *California Dept. of Corrections* v. *Morales*, 514 U. S. 499 (1995); *Mickens-Thomas* v. *Vaughn*, 321 F. 3d 374 (CA3 2003); *Nulph* v. *Faatz*, 27 F. 3d 451 (CA9 1994) (per curiam); *Fender* v. *Thompson*, 883 F. 2d 303 (CA4 1989).

My concerns with the Court's holding are increased, not diminished, by the fact that the Court does not seem to deny that respondents' claims indeed could be cognizable in habeas corpus proceedings. JUSTICE SCALIA's concurring opinion suggests otherwise, because respondents seek a form of relief (new parole hearings) unavailable in habeas. *Ante*, at 2. But the common practice of granting a conditional writ—ordering that a State release the pris-

oner or else correct the constitutional error through a new hearing—already allows a habeas court to compel the type of relief JUSTICE SCALIA supposes to be unavailable. See *Hilton* v. *Braunskill*, 481 U. S. 770, 775 (1987) ("Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief").

Because habeas is available for parole challenges like respondents', *Preiser* v. *Rodriguez*, 411 U. S. 475 (1973), thus requires a holding that it also provides the exclusive vehicle for them. In *Preiser*, the Court held that challenges to "the very fact or duration of [a prisoner's] confinement," as opposed to "the conditions of ... prison life," must be brought in habeas, not under 42 U. S. C. §1983. 411 U. S., at 499–500. The language of §1983, to be sure, is capacious enough to include a challenge to the fact or duration of confinement; *Preiser*, nonetheless, established that because habeas is the most specific applicable remedy, it should be the exclusive means for raising the challenge. *Id.*, at 489.

Respondents' challenges to adverse parole system determinations relate not at all to conditions of confinement but rather to the fact and duration of confinement. See *Butterfield* v. *Bail*, 120 F. 3d 1023, 1024 (CA9 1997) ("[A] challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement"). Straightforward application of *Preiser* and the cases after it would yield the conclusion that these claims must be brought in habeas.

The majority's contrary holding, permitting parole determination challenges to go forward under §1983, is not based on any argument that these claims should be characterized as challenges to conditions of confinement rather than to its fact or duration. That argument is unavailable to the Court. The majority must say instead that respondents' claims do not fall into the "core of ha-

beas.'" *Ante,* at 8. For this, it gives two reasons.

The first is that success on the claims will not necessarily entitle respondents to immediate release. *Ante,* at 7. This, as noted at the very outset, proves far too much. If the Court's line of reasoning is sound, it would remove from the "core of habeas" any challenge to an unconstitutional sentencing procedure.

The second reason, that success on the claims does not necessarily imply the invalidity of respondents' convictions or sentences, *ante,* at 7–8, is both misplaced and irrelevant. It is misplaced, because it takes out of context the test employed in *Heck* v. *Humphrey,* 512 U. S. 477 (1994), and in *Edwards* v. *Balisok,* 520 U. S. 641 (1997). In both those cases there was a temptation to seek only relief unavailable in habeas, such as damages (and declaratory relief serving as a predicate to damages), and thus to do an end run around *Preiser. Heck, supra,* at 481; *Balisok, supra,* at 643–644; see also *Muhammad* v. *Close,* 540 U. S. 749 (2004) (*per curiam*) (recognizing that damages are unavailable in habeas). Today's case does not present that problem. The fact that respondents' claims do not impugn the validity of their convictions or sentences is also irrelevant. True, respondents' contentions have nothing to do with their original state-court convictions or sentencing determinations. Stating this fact, however, gets the Court no closer to resolving whether parole determinations themselves are subject to direct challenge only in habeas. That is why we have held that administrative decisions denying good-time credits are subject to attack only in habeas. *Preiser, supra,* at 477, 500; *Balisok, supra,* at 643–644.

The Court makes it a point to cite a sentence fragment from *Close,* observing that "the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction.'" *ante,* at 9 (quoting 540 U. S., at 751, n. 1). That statement, however, is inapplicable even on its own terms, because it addresses the *Heck* problem,

not this one. Furthermore, even apart from *Heck's* inapplicability to this case, the full sentence from which the majority takes the quotation makes clear that the Court in *Close* was contrasting confinement *per se* with "special" disciplinary confinement for infraction of prison rules," 540 U. S., at 751, n. 1. That simply is not at issue here.

In sum, neither of the majority's stated principles can justify its deviation from the holding *Preiser* demands.

Today's ruling blurs the *Preiser* formulation. It is apparent that respondents' challenges relate not at all to conditions of confinement but solely to its duration. Notwithstanding *Preiser's* direction that challenges to the fact or duration of confinement should be restricted to habeas, the Court's decision will allow numerous §1983 challenges to state parole system determinations that do relate solely to the duration of the prisoners' confinement.

It is unsurprising, then, that 18 States have filed an *amicus* brief joining with Ohio in urging the opposite result, see Brief for Alabama et al. as *Amici Curiae.* Today's decision allows state prisoners raising parole challenges to circumvent the state courts. Compare 28 U. S. C. §2254(b)(1)(A) (providing that a person in custody pursuant to a state-court judgment must in general exhaust all "remedies available in the courts of the State" before seeking federal habeas relief) with 42 U. S. C. §1997e(a) (requiring only that a prisoner exhaust administrative remedies before bringing a §1983 action to challenge "prison conditions"). Parole systems no doubt have variations from State to State. It is within the special province and expertise of the state courts to address challenges to their own state parole determinations in the first instance, particularly because many challenges raise state procedural questions. Today the Court, over the objection of many States, deprives the federal courts of the invaluable assistance and frontline expertise found in the state courts.

For the reasons given above, I would reverse.