**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ABDUS-SHAHIB M.S. ALI.** | ) | |
| | ) | |
| | ) | **Civil Action No. <u>06-0235</u>** |
| **Plaintiffs,** | ) | **Judge: <u>Lamberth</u>** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **U.S. PAROLE COMMISSION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

Plaintiffs' move for certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class consists of "all of the District of Columbia Department of Corrections Inmates that were transferred into the custody of the U.S. Federal Bureau of Prisons and were denied parole under the said authority and supervision of the U.S. Parole Commission." **<u>SUBPART C SECTION 2.70 AUTHORITY AND FUNCTIONS OF THE U.S. PAROLE COMMISSION WITH RESPECT TO DISTRICT OF COLUMBIA CODE OFFENDERS.</u>**

(a) The U.S. Parole Commission shall exercise authority over District of Columbia Code Offenders pursuant to Section 11231 of the national Capital Revitalization and Self-Government Improvement Act of 1997, Public Law 105-33, 111 Stat. 712, and D.C. Code 24-409. The rules of Subpart (C)- District of Columbia Code Prisoners and Parolees, shall govern the operation of the U.s. Parole Commission with respect to D.C. Code offenders and shall constitute the parole rules of the District of Columbia, as amended and supplemented pursuant to Section 11231 (a)(1) of the act.

**1.**

**RECEIVED**

MAR 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(b) The Commission shall have sole authority to grant parole, and to establish the conditions of release, for all District of Columbia Code prisoners who are serving sentences for felony offenses, and who are eligible for parole by statute, including offenders who have been returned to prison upon the revocation of parole or mandatory release. (D.C. Code 24-404 and 408). The above authority shall include youth offenders who are committed to prison for treatment and rehabilitation based on felony convictions under the D.C. Code. (D.c. Code 24-904(a)).

(c) The Commission shall have authority to recommend to the Superior Court of the District of Columbia a reduction in the minimum sentence of a District of Columbia Code prisoner, if the Commission deems such recommendation to be appropriate. (D.C. Code 24-401c).

(d) The Commission shall have authority to grant parole to a prisoner who is found to be geriatric, permanently incapacitated, or terminally ill, notwithstanding the minimum term imposed by the sentencing court, (D.C. Code 24-461 through 467).

(e) The Commission shall have authority over all District of Columbia Code felony offenders who have been released on parole or mandatory release supervision, including the authority to return such offenders to prison upon an order of revocation. (D.C. Code 24-406).

Plaintiffs' request an oral hearing on their motion and the said appointment of counsel for the class action.

2/12/07

Respectfully submitted,

Abdus-Shahid M.S. Ali

Abdus-Shahid M.S. Ali, #03201-000

2.

## CERTIFICATE OF SERVICE

I, *Abdus-Shahid M.S. Ali* hereby certify that on this *12th* day of *February*, 2007, I have served and mailed a true and correct copy of the foregoing, Plaintiff's Motion for Class Certification, on Quank Luong, Assistant U.S. Attorney for the District of Columbia, at 555 Fourth Street, N.W. Room E-4417, Washington, D.C. 20530, and the original is herein served on the U.S. District Court, for the District of Columbia, Office of the Clerk--U.S. Courthouse at Third and Constitutional Avenue, N.W., Washington, D.C. 20001.

The above stated is affirmed by the undersigned and pursuant to 28 U.S.C. section 1746, under penalty of perjury.

Abdus-Shahid M.S. Ali, et. al
U.S.P. Big Sandy
P.O. Box 2068
Inez, Kv. 41224

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ABDUS-SHAHID M.S. ALI,**

               **Civil Action No: <u>06-0235</u>**
               **Judge:  <u>Lamberth</u>**

        **Plaintiffs,**

    **vs.**

**U.S. PAROLE COMMISSION**

        **Defendants, et al.,**


## <u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23 F.R. CIV. PROC.</u>


### <u>PRELIMINARY STATEMENT</u>

Plaintiffs move for certification of this action as a class action pursuant to Rule 23(a), 23 (b)(1) and 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class consists of "all adherents of the traditional District of Columbia Code Offenders whom has been transferred to the Federal Bureau of Prisons pursuant to section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, P.S. 105-33, 111 Stat. 712, and D.C. Code 24-409, and who are sentenced to a parole eligibility date. The class may consist of an estimated 150 persons to a few thousand formerly DCDC inmates who have gone up for parole under the U.S. Federal Parole Commission and have been denied parole or who will be going up for parole consideration pursuant to the Parole Commission's authority.

The named plaintiffs bring this action under 42 U.S.C. section 1983, and this action arises under the Fifth, Eighth, and Fourteenth Amendments. Jurisdiction is also conferred on this Court.

Counsel sent the proposed law to the Counsel where it set for 60 days with no action on it by any congressional persons. D.C. law says that a bill becomes law if Congress fails to act on it within 60 days. The irony here is that D.C. citizens were cheated out of their right to make comments concerning the five years hit for parole denial (prior to that the D.C. Code only allowed D.C. Code offenders to be given the highest hit of 24 months), thus, all five year hits by the Parole Commissioner violates the laws of the District of Columbia!

The original-Plaintiff had Parole Examiner J. Robertson Haworth as his examiner. He was well aware that the Plaintiff was serving a sentence of twenty years to life and that 20 years equals 240 months. Yet he computed 251 months to decide Plaintiffs hit range...adding 251 months on to the base-point score which he had computed as a "9," equaling a base-point-range of "110-140 months, e.q., $(119 + 251 = 391 \text{ months})$...Thus the Examiner, Mr. J.R. Haworth knowingly computed my hit range wrong and that parole hearing should not be allowed to stand as due process of law or a just hearing on parole.

The Originial-Plaintiffs' parole examiner, J.R. Haworth under the U.S. Parole Commissioner's revise parole guidelines was allowed to give up to one-third of the minimum sentence (in months) for the rehabilitative Superior Programming. Thus that means one-third of 20 years which equals 6 years and eight months. However, the Examiner, Mr. J.R. Haworth, gave the Plaintiff only 12 months dropped from the hit range on the low end and on the high end. However under the Ex-Post Facto Laws of old D.C. Parole Guidelines policy was to drop 2 points on the S.F.S for superior programming. That would mean that the Plaintiff's S.F.S of 5 would have dropped to a "3" S.F. Score. The hit range would also drop in points from a "9," which would make the hit smaller to. Thus, in such cases it is to the D.C. Code Offenders use of Ex-Post Facto law as apposed to the new U.S. Parole Commissioners Guidelines, which are

by 29 U.S.C. section 1331 and 1343(3) & (4), 28 U.S.C. section 1367, and D.C.C. Long Arm Statutes, D.C.C. section 13-423(a).

The Plaintiffs submit that the allegations and alleged statutory and constitutional violations by the defendants and their agents represent the grounds on which the class action certification are so based. Thusly, these claims concern: the denial of parole to the said original-Plaintiff, Abdus-Shahid M.S.. Ali and all similar situated D.C. Code offenders whom have been denied parole and given an unjustifiable and unconstitutional hit or set-off of parole via., the U.S. Parole Commissioners or its' agents. Thus, the lack of due process under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Article I, section 9, clause (3) and section 10, clause (1) [Ex-Post Facto Clause] to the Constitution.

The plaintiff and other similarly situated D.C. Code Offenders has constantly been given "ceremonial reconsideration parole dates" ranging from three(3) to five(5) years. The plaintiff contends that upon the service of his mandatory sentence of 20 years to life without any disciplinary infractions and completing "Superior Programming" parole should have been granted. However, the use by the examiner of unsubstantiated and false information of a 45 year old juvenile record where there was no trial, jury conviction or plaintiff being represented by an attorney, the juvenile judge ruled that plaintiff was involved in the case and sent me to the Federal National Training School For Boys, in 1960, at the time plaintiff was only 15 years old.

Thus, the complaint concerns the Plaintiffs' denial of parole and giving of a five years hit (that could only be called a ceremonial-hit), for the examiner promised at least one more five years hit and a two years hit before the Plaintiff would even be within the parolable base-point score-range. But the real problem with the U.S. Parole Commissions five-years hit policy is that it is illegal and was never sent to the federal register for its 30 days comment period. The City

much harsher than the old laws. The Ex-Post Facto Law of the Constitution allows for use of laws as they were at the time of commitment and under the D.C. Board of Parole to be used as apposed to the newer U.S. Parole Commissions' guidelines, that call for harsher punishment of D.C. Code offenders being considered for parole at the time of the Plaintiffs' commitment the sentence for murder in the District of Columbia was a mandatory 20 years to life, where as today under the D.C. Code the murder statute is mandatory 60 years to life. Dealing with this change seems to be a problem with the Commission Examiners which cause many more hits for the 20 years to life sentence than are necessary if the old guidelines are applied.

The Commission allows non-commissioners to vote on denial of parole which seems to violate the policy of the Commissioners being the ones who grant or deny parole. The examiners make recommendations that must be agreed upon by another examiner or over-ruled by a supervisor examiner. However, four people signed off on the original Plaintiffs' hearing summary denial of parole. Plus the names are not readable and the Commission has refused to clarify who these people are that signed off on the five years hit (set off of parole).

The Commission's S.F. Scores on double counting are totally unfair and unconstitutional an violate due process of law.

The Commission's use of information that can not be verified or proven, to deny parole to D.C. Code offenders is unconstitutional and that is true of the use of juvenile records that cannot be verified to give hits to D.C. Code offenders. Thus, the Plaintiffs request a declaration of their rights as D.C. Code offenders being considered for parole via., the Commission as follows:

[A] Is the U.S. Parole Commission bound by congressional mandate to set the release dates of all-old law D.C. Code offenders? It is our understanding that during the first five years extension period the Commission was supposed to set the release dates for all federal and D.C.

4,

Code offenders under its' supervision...But this the Commission refused to do down to the last minute. Thus we are four extensions later and some twenty-years have passed and the Commission still have not set any dates for either federal or D.C. Code offenders. We contend that the Commission purposefully have refused the said Congressional mandate to give all federal and D.C. Code offenders date to end their sentence...On October 12, 1984, Congress eliminated federal parole and set in place provision at Section 235(b) of the Sentencing Reform Act for the transition from a sentencing/punishment system with parole eligibility to one in which the offenders would serve determinate sentence. Thus, the key provision at Section 235(b) (3) required that the Parole Commission, shortly before its extinction, set release dates within the parole guidelines for prisoners still within its jurisdiction. See *Lyons v. Mendez*, 303 F.3d 285 (3rd Cir. 2002).

[B]  Thus, is the U.S. Parole Commission in violation of the original congressional mandate by not setting the release dates of all federal and D.C. Code offenders instead of setting denials of parole and reconsideration hearing dates especially for D.C. Code offenders.?

[C]  Does the Commission have the authority to give you less than one-third of your minimum for "Superior Programming," when the guidelines manual recommend "One-Third" of your minimum for the classification of "Superior Programming?" This is said in the Commissions' revised rules and guidelines! Yet, the Commission refused to follow them in the original Plaintiff's cause of action and many others similarly situated!!!

[D]  Can the Commission create rules, policy and guidelines that violate the judicial sovereignty of the District of Columbia Government, (which passes laws, approved by Congress), and the sovereignty of the Superior Court of the District of Columbia, that in fact places the U.S. Parole Commission in the position of being the sentencing court of authority?

Commissioner that would be willing to sign off on him making parole!

[E]  Does subsection 235(b)(3) of the Comprehensive Crime Control Act of 1984 mandate the U.S. Parole Commission to set release dates for all federal and D.C. Code offenders?  Thusly, is the Commission in violation of his mandate that it have refused to do for over 23 years?  And should the Commission be in the business of setting reconsideration hearing for persons it has denied parole to?

[F]  Thusly, the Plaintiff and others similarly situated seek damages, injunctive relief and declaratory judgments where necessary to enforce their rights to a just and proper parole hearing under the D.C. Code; the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution; and the statutory provisions of 42 U.S.C. section 1983; 28 U.S.C. section 1331, and 1343(3), & (4); 28 U.S.C. section 1367...and D.C. Code section 13-334(a), 13-422 and section 13-423, the District of Columbia's long-arm statute.

[G]  We believe that the Commission have used arbitrary and capricious means of giving D.C. Code offenders unnecessary parole set-offs and his in order to stay in business and keep from being abolished by the U.S. Congress.  Many D.C. Code offenders have been given and received set-offs on parole without reason or purpose from a conventional point of view...Many D.C. Code offenders have been given three years hit (set-off of parole) and at the rehearing were given either a five years hit or another three years hit, with no reason or purpose in mine.  However, these unnecessary hits have served the business of keeping the Commission busy and in business.  Thusly, the Commission is an independent agency of the U.S. Department of Justice.  However, it acts on behalf of the District of Columbia as a parole board for the D.C. Code offenders, who are still under the old-law, D.C. Code laws.  It does this, via,. an act of Congress passed in 1997.  The Revitalization Act, which gives the Commission control over

*6.*

The Commissions' S.F. Score and the Base Point Scores are all added together in such a way as to give more than one five-year hit in a singular review hearing..e.g., the original Plaintiff's base-point score after have two-points from the S.F.S. added to it was "9." A "9 base-point score means that on the hit or set-off range is =110 to 140 months. Now 110 is the low point of the base point score and 140 months is the high range of the hit or set-off score. The number of months in your parole eligibility-minimum is added to the low side and to the high side of the range score...(in the original Plaintiff's case that was supposed to be "240" which was equal to twenty years; however, for whatever reason the Commission's Examiner Mr. J.Robert Haworth chose to use 251 months as the number of months that made the Plaintiff eligible for parole consideration which was in error and the examiner knew it but still made the wrong computations anyway). Thus, 110+251 = 361 Months and 140 + 251 = 391 months. If 12 months are removed from the low and the high ends of the hit-range it would be 361 - 12 months = 349 months; and if 12 months are removed from the high side of the hit range it is like 391 - 12 - 379 months. Thusly, if 251 months are removed from both the low side and the high side of the hit range we have 349-251 = 98 months to do the low side of the hit range and on the high side of the hit range 379 - 251 = 128 months to do on the high side of the hit range which means that the Plaintiff will have to do 98 months worth of hits (which means that the one-five years hit is not enough for the Plaintiff will need to get another 38 months-hit before hi is in the lowest hit range and he would have to do 128 months before he is in the high hit range of being able to be paroled, if he was considered. Now it is because of the above cited that he Examiner Mr. Robert Haworth told the Plaintiff Ali that in order for him to be considered for parole he would have to get two "five years hits and them a two years hit before he could be recommended for parole; and that that was the least of his problems! Because the greatest problem would be to find a

parole and the denial of parole to D.C. Code offenders. Thus, the Commissions decisions on D.C. Code offenders is as stated, "Decision is not Appealable." Thusly, only the Courts and the U.S. Congressional Judiciary Oversight Committee have any authority over the actions of the U.S. Parole Commission. However, the Commission is responsible for its actions, rules and regulations and policy that does harm to its wards/offenders. It is also believed that the Commission is suable also as an acting-state agency, especially with the use of supplemental jurisdiction. Thusly, the Commission while acting on behalf of the D.C. Code offenders, acts under the color of D.C. Code of law!

Thusly, Defendants' violations may include infringement of plaintiffs Fifth, Eighth, and Fourteenth Amendment rights to due process, including equal protection and freedom from discrimination on the basis of being a prisoner. The Defendants have violated plaintiffs rights in various ways, including imposing unjustified restrictions on the opportunity to make parole, and imposing unnecessary delays and set-off of parole for D.C. Code offenders. The Commission and its examiners have used knowingly miscomputed information to make parole decisions. The Commission examiners have refused to change or correct facts and information in their files that they know is wrong or in error of a true fact. The D.C. Offenders that are going up for reparole hearings are not given the benefit of their rehabilitational programming. In fact the old D.C. Board of Parole around 1987, developed and utilized both pre-incarceration and post-incarceration factors in making parole suitability determinations, whereas, the Commission on many of the D.C. Code offenders that they have taken up for rehearing has used only two pre-incarceration factors (as they do for Federal Offenders), thus de-emphasizing any rehabilitation results from incarceration. Thus, these men have been continuously given set-off after set-off because the Commission's examiners are using federal guidelines that they have converted for

use on D.C. Code offenders. This is one of the main problems that Congress should have considered before appointing the Commission to take responsibility for D.C. Code offenders. The federal government and the U.S. Parole Commission long ago declared that rehabilitation does not work. The same year, 1984, the federal parole system was abolished but they promised to give all federal prisoners release dates which they never did. See *Fletcher v. D.C.*, 391 F.3d 250, 251 (Fletcher II); also see *Fletcher v. D.C.*, 370 F.3d 1223, 1227 (Fletcher-I); 2006 U.S. App. LEXIS 269 No. 03-5359, January 6th, 2006, Decided.

I.      The Proposed Class Satisfies the Requirement of Rule 23(a).

The prerequisites of class certification are enumerated in Rule 2(a) of the Federal Rules of Civil Procedure, which provides that "One or more members of a class may sue...as representative parties on behalf of all only if (1) the class is  so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of class." Fed Rule Civ. P. 23(a).

A.      The Class Is So Numerous That Joinder Of All Members Is Impracticable:

The proposed D.C. Code Offenders that have been denied parole by the U.S. Parole Commission unjustifiably class easily satisfies the first requirement of Rule 23(a). The class is comprised of an estimated 150 prisoners or more. In addition to the large number of class members [1] other factors exacerbate the impracticability of joinder in this case. *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993) ("Determination of precticability [of joinder] depends on all the circumstances surrounding a case, not mere numbers"). Most potential members of the proposed class are indigent and unable to initiate independent actions, a factor properly

9.

considered in determining the impracticability of joinder. *Familienstiftung v. Montepellier Resources, Ltd.,* 178 F.R.D. 405, 410 (S.D.N.Y. 1998). See also, *Deposit Guar Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small, individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.").

Further, the "fluid composition" of a prison population adds an element of instability and unpredictability of joinder. While this action is pending, some members of the plaintiff class will be released and others will be incarcerated. In addition, defendants may at any time transfer any particular prisoner to another facility, even out of state.

This Court has already recognized the propriety of certifying a class that will include those who will be confined at a prison in the future. *Inmates of Occuquan v. Barry*, 650 F. Supp. 619, 620(D.D.C. 1986) (describing the previously certified class as "all persons, present and future, confined to the Occuquan facility..."), vacated on other grounds, 844 F. 2d. 828 (D.C. Cir. 1988), see also, *Robbins v. Kleindienst*, 383 F. Supp. 239, 241 (D.D.C. 1974) (explaining that "[e]ven though certain named representatives are no longer incarcerated, they still may represent the class").[2]

---

[1]    Although "numbers alone are not usually determinative," *Anders v. Bechtel Power Corp,* 780 F.2d 124, 131 (1st Cir. 1985) courts typically find that joinder is impracticable when there are thirty-five, forty, fifty...class members." 7A, Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: section 1762, and 177-82 (2d ed. 1986). See also, *EEOC v. Printing Industry*, 92 F.R.D. 51, 53-54 (D.D.C. 1981) (noting that "as few as 25-30 class members should raise a presumption that joinder is impracticable and thus the class should be certified."); *Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 109 (E.D. Pa. 1992) ("While the absolute number of class members is not the sole determining factor, generally the courts have found the numerosity requirement fulfilled where the class exceeds 100.") (quoting *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D. Pa. 1975).

B.     <u>There Are Questions Of Both Law And Fact Common To The Class:</u>

The putative class also satisfies the "commonality" prerequisite of Rule 23(a)(2). That

prerequisite requires only the existence of a single question of law or fact common to the class.

*In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F. 3d 283, 310 (3rd Cir. 1998).

> **"A common nucleus of operative fact is usually enough to**
>
> **satisfy the commonality requirement of Rule 23(a)(2)."**
>
> **Common nuclei of fact are typically manifest where...**
>
> **defendants have engaged in standardized conduct towards**
>
> **the members of the proposed class...**

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1008) (quoting *Rosario v. Livaditis,* 963 F.2d. 1013,

1018(7th Cir. 1992)(citations omitted.) See also *Franklin v. Barry*, 909 F.Supp. 21, 30 (D.D.C.

1995) (holding that Rule 23(a)(2) "does not require commonality on each fact or every issues"); 1

Herbert Newberg & Alba Conte, <u>Newberg on Class Actions, section 3.10, at 2-35</u>, Ld ed. 1992

("When the party opposing the class has engaged in some course of conduct that affects a group

of persons and gives rise to a cause of action, one or more of the elements of that cause of action

will be common to all of the persons affected.")

Here, virtually all questions of fact and law are common to the putative class members.

As D.C. Code offenders in the U.S. Bureau of Prisons and under the authority of the U.S. Parole

Commission, of which both Federal and D.C. Code offenders are subjected. However, all class

members are subject to the same Commission interpretations in the Federal institutions and they

---

<sup>2/</sup>     Plaintiffs are not required to specify the exact number of persons in the class. *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 499 (N.D. Ill. 1998), *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)

all have treatment problems in common to the class with respect to the opportunity to make parole and be given the same kind of inequitable set-offs and hits on parole considerations. The Defendants' infringements on the D.C. Code Offenders rights under the Fifth, Eighth, and Fourteenth Amendments, and the Ex-Post Facto congressional laws apply to each individual in the same way they apply to the class as a whole.

     C.     Plaintiff's Claims Are Typical Of The Claims Of The Class:

The named plaintiffs satisfy the third requirement of Rule 23(a): claims are typical of the claims of the class. As long as the claims [of the class] 'resemble or exhibit the essential characteristics of those of the representatives,' Rule 23(a)(3) will be satisfied." *Varguas v. Meese*, 119 F.R.D. 291, 295(D.D.C. 1987) (quoting *Kas v. Financial Gen. Bankshares, Inc.*, 105 F.R.D. 460, 461 (D.D.C. 1984); *Thomas v Christopher*, 169 F.R.D. 224, 238 (D.D.C. 1998) ("As with requirement of commonality, the facts and claims of each class member do not have to be identical to support a finding of typicality.") See also **Robbins**, 383 F.Supp. at 241. The typicality requirement is designed to ensure that the interests of the class and the named Plaintiff are aligned. *In re The Prudential Ins Co. of Am. Sales Practices Litig.*, 148 F.3d at 311. In fact, the facts that support commonality tend also to support typicality. Id. Very simply, in this case there is no difference between the complaints of the named plaintiffs and those of the class. The identical nature of the complaints in the present case strongly support a finding of typicality as well as commonality.

     D.     Plaintiffs Will Fairly And Adequately Protect the Interests Of The Class:

To be adequately representatives, the named Plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class" and "must appear able to vigorously prosecute the interests of [the] class through qualified counsel." *National Ass'n for Mental*

*Health, Inc. v. California*, 717 F.2d 1451, 1456 (D.D.C. 1983). Named Plaintiffs Abdus-Shahid

M.S. Ali, and all other named Plaintiffs were and are domiciled at U.S.P. Big Sandy, which is a

facility within the U.S. Federal Bureau of Prisons, and is located at P.O. Box 2068 Inez,

Kentucky, 41224. Each named Plaintiff was denied parole by the Commission and given

unreasonable set-offs by the Commission, nor were any presumption dates set in lue of their

parole date in accordance with the instructions of Congress. Double-counting was used in all the

parole consideration hearings where the salient factor scores were used. They all suffered from

the defendants restrictions on the D.C. Code offenders parole guidelines which were hardened

under the treatment by the Commission. Each have filed a pro se class action complaint in this

Court. Because claim-class members and named claim-class members share qualify in the claims

raised and remedies sought, Plaintiffs interest are not antagonistic to those of the other class

members. The Plaintiffs seek damages, declaratory and injunctive reliefs, which will insure

equally to all class members. The Plaintiffs representative class seek no special considerations

and will not profit from their representational efforts.

   The Plaintiffs does request the Appointment of Pro Bono counsel for the adequacy of

plaintiffs' representation of the class is enhanced by the commitment and experience of

Plaintiffs' counsel(s). The Pro Bono Counsel appointed should be and have significant

litigational and class action experience and the resources necessary to assure that class members

will be provided with all reasonable assistance in pressing their claims efficiently and effectively.

II.    The Requirements of Rule 23(b) are Satisfied:

   Thusly, in addition to meeting all four of the conditions enumerated in Rule 23(a), a class

must fit into at least one of the categories described in Rule 23(b), a class must fit into at least

one of the categories described in Rule 23(b). The categories are not mutually exclusive and a

*13.*

class may fit into and appropriately be certified under more than one provision of Rule 23(b).

*Eubanks v. Billington*, 110 F.3d. 87, 91(D.C.Cir 1997) ("The three categories are not mutually

exclusive, and a class may be certified under more than one category."); see e.g., *Women*

*Prisoners of the District of Columbia Department of Corrections v. District of Columbia*, 877 F.

Supp. 634, 638(D.C.C. 1994) (explaining class certified under Rule 23(b)(1) and 23(b)(2))

vacated and modified in part on other grounds, 599 F. Supp. 65 (D.C.C. 1995); *National*

*Treasury Employees Union v. Reagon*, Civ. Act. No. 81-0198, 81-0284, 1988 WL 33028, at 81

(D.D.C. March 24, 1988) (same).

The categories differ in relation to the characteristics of the members of the class and the

nature of the remedy the class seeks. In particular, classes certified pursuant to the provisions of

Rule 23(b)(1) and (2) must demonstrate a cohesiveness of circumstances, situation, and interests

among class members not required of a class certification under Rule 23(b)(3), which permits

potential class members to opt out of the class. *Eubanks v. Billington*, 110 F.3d at 96, citing

*Holmes v. Continental Can Co.,* 706 F.2d. 1144, 1154-60(11th Cir. 1983); *Thomas v. Albright*,

139 F.3d 227, 234 (D.C. Cir. 1994). Where the requisite cohesiveness is demonstrated, a 23(b)(1)

or (2) class is preferred to a 23 (b)(3) class. *Steward v. Rubin*, 948 F.Supp. 1077, 1092-93

(D.D.C. 1996) (explaining that policy favors a mandatory class over an opt-out for class

members where there is a common claim susceptible to a single proof and a single injunctive

remedy), aff'd 124 F.3d 1209 (1997(); 1 Newberg on Class Actions, section 4.20, 4-71-75. The

proposed D.C. Code Offenders whom have been denied parole under the commissions' harsher

rules class is notably cohesive, and meets all the other requirements of the Rule 23 (b)(1) and (2).

The relevant part of the Rule states; (1) the prosecution of separate actions by or against

individual members of the class would create a risk of (A) inconsistent or varying adjudications

*14.*

with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(1) and (2). Accordingly, Plaintiffs seek certification of the proposed class pursuant to any one or any combination of these categories identified in Rule 23(b)(1) and (2).

    A.    The Class Qualifies For Certification Under Rule 23(b)(1) and (2):

    A class may be certified under Rule 23(b)(1)(A) if "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standard of conduct for the party opposing the class..." Fed. R. Civ. P. 23(b)(1)(A). The proposed D.C. Code offender-prisoner class is aparadigm of a Rule 23(b)(1)(A) class; it seeks both injunctive and monetary damages and challenged practices and conduct of defendants who are required by law to deal with all class members in the same manner, rules, regulations and policy. See 1 Newberg On Class Actions, section 4.08 at 4-26 (describing practical candidates for rule 23(b)(1)(a) classes). Rule 23(b)(1)(A) does not require that the class be limited to a certain kind of relief, but will accommodate those seeking either exclusively or predominately monetary damages or equitable relief, or any combination thereof. And where, as here the request for monetary relief does not erode the underlying premise that class members suffer from a common injury properly addressed by class-wide relief, it is compatible with the

categories countenced by Rule 23(b)(1).  See *Allison v. Citgo Pretroleum*, 151 F.3d 400, 412-13

(5th Cir. 1998).  Certification of the proposed D.C. Code offender-prisoner class under Rule 23

(b)(1)(A) is appropriate.

      B.     The Class Qualifies For Certification Under Rule 23(b)(1)(B):

     A class that fits the category described in Rule 23(b)(1)(A) often also fits the category

described in Rule 23(b)(1)(B).  1 Newberg On Class Action, section 4.08, at 4-27.  The proposed

D.C. Code-Prisoner Class is such a class.  It is obvious that a judicial decision addressing

whether the Constitution or Civil Rights Act prohibits certain actions or requires certain other

actions by prison officials toward one prisoner but not against another "would as a practical

matter be dispositive of the interests" of all the D.C. Code offender-prisoners in that said

situation.  However, parole guideline-freedoms are not something representatives of the

government may observe in varying degrees between individual prisoners who are similarly

situated.  Thus, certification of the proposed D.C. Code Offender-prisoner class under Rule 23(b)

(1)(A) is appropriate.

      C.     The Class Qualifies For Certification Under Rule 23(b)(2):

          Rule 23(b)(2) permits class actions for declaratory or injunctive

          relief where "the party opposing the class has acted or refused to act

          on grounds generally applicable to the class," [thereby making

          appropriate final injunctive relief or corresponding declaratory relief

          with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2).] Civil

          rights cases against parties charged with unlawful, class-base

          discrimination are prime examples.

See, *Amchem Prods., Inc. v. Windor*, 117 S.Ct. 2231, 2245(1997) (quoting Fed. R. Civ. P. 23(b)

(2)). Courts have interpreted the requirement of Rule 23(b)(2) to mean that the party "either has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or has established or acted pursuant to a regulatory scheme common to all class members." 7A Charles Alan Wright, Arther R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil, section 1775, at 499 (2nd ed. 1986). There can be no doubt that defendants in this action have acted pursuant to a regulatory scheme common to all class members. Where a full-blown regulatory scheme has not governed defendants conduct toward plaintiffs, defendants conduct has nonetheless deem consistent with respect to all members of the putative class. Defendants' conduct with respect to permitting double-counting, refusing to acknowledge the D.C. Codes, Ex-Post Facto violations, refusing to give D.C. Code offenders a date to go home after their extensions when and while Congress has abolished the Federal and District of Columbia Parole System, to name just a few examples, is conduct that does not vary between individual class members for they all suffer this and many more discriminations.

Certification under Rule 23(b)(2) is permissible only if the primary relief sought is injunctive or declaratory. The requirement that injunctive relief predominate does not preclude the award of monetary relief on a class-wide basis when monetary relief is secondary or ancillary o the predominant injunctive relief. _Eubanks v. Billington_, 110 S.3d at 92 ("Courts have generally permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive relief, at least where the monetary relief does not predominate.");_Thomas v. Christopher_, 169 F.R.D. at 239(certifying a class seeking both damages and injunctive relief under 23(b)(2) and noting that the parties submitted that, "in cases where monetary relief is sought, certification under Rule 23(b))(2) is precluded only if the final relief sought relates 'exclusively or predominately to money damages") (quoting Fed. R. Civ. P. 23 Advisory

Committee Note); 1 <u>Newber on Class Actions</u>, section 4.12, at 4-43.

Moreover, the size of the monetary damages sought or awarded does not necessarily determine their predominance. Even when the money damages sought are very large, they may nonetheless be secondary or ancillary to the injunctive remedy sought, and thus certifiable as a Rule 23(b)(2) class. See, e.g., <u>*Stewart v. Rubin*</u> 948 F. Supp. at 1092 (explaining that "far-reaching equitable measures...far outweigh" the class compensatory damage award of $4 million for the whole, or an average individual award of $16,500) aff'd, 1245 F.3d 1309 (1997); <u>*Thomas v. Christopher*</u>, 169 F.R.D. at 241 (determining that injunctive relief was predominate in action where class certified under Rule 23 (b)(2) received 3.8 million in damages.).

Thus, the monetary relief sought here is secondary to the injunctive relief sought. The money damages will accrue only to class members, whereas the injunctive relief will insure to many persons who will be governed by the policy corrections of the commission and its individual employees. In short, the injunctive and declaratory relief will have a far broader and more lasting reach and effect than the monetary damages for the few hundred individual class members. This class qualifies for certification pursuant to Rule 23(b)(2).

## CONCLUSION

Class certification is necessary to ensure that plaintiff's constitutional, statutory and D.C. Code legislative rights are protected and properly enforced. Class action is not only an appropriate procedure vehicle for resolving the plaintiffs claims and of the class members--it is the only reasonable one. WITHOUT CLASS CERTIFICATION, this Court cannot ensure that the constitutional rights of over 150 to possibly thousands of D.C. Code offender class members rights will be vindicated! The problems would be insurmountable. The judicial and legal resources needed to litigate individual cases would be immense, the waste commensurate and

unnecessary. The risk of conflicting adjudication if in fact there were individual adjudications would be so enormous. In reality the prosecute is virtually nonexistent, leaving most of them vulnerable to abuse like that cited i the original and amended complain...without legal redress. And finally, that temporary nature of each D.C. Code offenders status as a resident of the 105 facilities in the U.S. Federal Bureau of Prisons would always threaten to render moot the ultimate vindication of any individual claims. For all these reasons, plaintiffs request that the Court grant their motion for class certification.

The D.C. Code-Offenders Class Member Representative are as Follows:

_Abdus-Shahid M.S. Ali_, Et al,

Abdus-Shahid M.S. Ali (U.S.P-Reg. No. 03201-000)                    (DCDC No. 136-476)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ABDUS-SHAHID M.S. ALI,                    )
                                          )
                                          )    Civil Action No. <u>06-0235</u>
                            Plaintiffs,   )    Judge:  <u>Lamberth</u>
                                          )
                v.                        )
                                          )
U.S. PAROLE COMMISSION, et al.,           )
                                          )
                            Defendants.   )
_____

## <u>ORDER</u>

UPON CONSIDERATION of Plaintiffs' Motion for Class Certification, the

Memorandum in Support thereof and in Opposition Thereto, it is this_____day of

_____, 2007,

ORDERED, that the Motion is granted pursuant to Rule 23(a), 23(b)(1) and 23(b)(2) of

the Federal Rules of Civil Procedure, and this Court certifies this action as class action.  The

certified class consists of all D.C. Code offenders that have gone up for parole or will be going

up for parole under the U.S. Parole Commissions' Authority and Functions pursuant to Section

11231(a)(1) of the National Capital Revitalization and Self-Government Improvement Act of

1997, and all offenders that have been denied parole and given set off via., the Commission and

its examiners.


/s/_____
        U.S. Dist. Judge, Royce C. Lamberth

## CERTIFICATE OF SERVICE

I, _Abdus-Shahid M.S. Ali_ hereby certify that on this _12th_ day of _February_, 2007, I have served and mailed a true and correct copy of the foregoing, Plaintiff's Motion for Class Certification, on Quank Luong, Assistant U.S. Attorney for the District of Columbia, at 555 Fourth Street, N.W. Room E-4417, Washington, D.C. 20530, and the original is herein served on the U.S. District Court, for the District of Columbia, Office of the Clerk--U.S. Courthouse at Third and Constitutional Avenue, N.W., Washington, D.C. 20001.

The above stated is affirmed by the undersigned and pursuant to 28 U.S.C. section 1746, under penalty of perjury.

_Abdus-Shahid M.S. Ali_

Abdus-Shahid M.S. Ali, et. al
U.S.P. Big Sandy
P.O. Box 2068
Inez, Ky. 41224